LATHAM & WATKINS LLP
  Peter A. Wald (Bar No. 85705)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095
E-mail: peter.wald@lw.com

LATHAM & WATKINS LLP
  Michele D. Johnson (Bar No. 198298)
  Andrew R. Gray (Bar No. 254594)
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Telephone: +1.714.540.1235
Facsimile: +1.714.755.8290
E-mail: michele.johnson@lw.com
        andrew.gray@lw.com

Attorneys for Defendants and Nominal
Defendant, Quality Systems, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY J. FOSS, Derivatively on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CRAIG A. BARBAROSH, GEORGE H. BRISTOL, JAMES C. MALONE, PETER M. NEUPERT, MORRIS PANNER, D. RUSSELL PFLUEGER, STEVEN T. PLOCHOCKI, SHELDON RAZIN, and LANCE E. ROSENZWEIG,<br><br>Defendants,<br><br>-and-<br><br>QUALITY SYSTEMS, INC.,<br><br>Nominal Defendant. | Case No. 8:14-cv-00110-CJC-JPR<br><br>**Derivative Action**<br><br>**DEFENDANTS' AND NOMINAL DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**<br><br>Judge: Hon. Cormac J. Carney<br>Date: April 16, 2018<br>Time: 1:30 p.m.<br>Place: Courtroom 9B<br><br>**Oral Argument Requested** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND .................................. 4

III.   ARGUMENT ............................................................................................ 6

    A.   Plaintiff Has Not Established That Any Director—Let Alone A Majority—Is Interested .............................................. 9

        1.   No Director Faces A Substantial Likelihood Of Liability Based Upon The Unjust Enrichment And Insider Trading Claims ..................................................... 9

        2.   No Director Faces A Substantial Likelihood Of Liability Based Upon The Disclosure Claim ........................ 11

        3.   No Director Faces A Substantial Likelihood Of Liability Based Upon The Oversight Claim ...................... 13

            a.   Plaintiff Admits That QSI Maintained A System Of Internal Controls ......................................... 14

            b.   Plaintiff Does Not Allege That The Board Consciously Disregarded Its Duties .......................... 15

            c.   Service On Board Committees Does Not Support An Inference That Any Director Consciously Disregarded His Duties ...................... 17

    B.   Plaintiff Has Not Established That Any Director Lacks Independence ................................................................... 18

        1.   Plaintiff's Conclusory Assertion That QSI's Directors Are Beholden To Razin Does Not Raise A Reasonable Doubt As To Their Independence .................... 18

        2.   Razin's Share Ownership And Plochocki's Employment At QSI Do Not Raise A Reasonable Doubt As To Their Independence ................................. 20

    C.   Plaintiff's Complaint Should Be Dismissed With Prejudice ............................................................................ 21

IV.   CONCLUSION ....................................................................................... 22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

i

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

5

*Apple, Inc. v. Superior Court*,
   18 Cal. App. 5th 222 (2017) .......................................................................... 7, 21

6

*Aronson v. Lewis*,
   473 A.2d 805 (Del. 1984) .............................................................................. 7

7

8

*Baca v. Crown*,
   2010 WL 2812697 (D. Ariz. Jan. 8, 2010) .................................................... 8, 10

9

10

*Bader v. Anderson*,
   179 Cal. App. 4th 775 (2009) ....................................................................... 7, 8, 19

11

12

*Beam v. Stewart*,
   845 A.2d 1040 (Del. 2004) ........................................................................... 19, 20

13

14

*Clark v. Lacy*,
   376 F.3d 682 (7th Cir. 2004) ........................................................................ 11

15

16

*Desimone v. Barrows*,
   924 A.2d 908 (Del. Ch. 2007) ...................................................................... 14

17

18

*Fosbre v. Matthews*,
   2010 WL 2696615 (D. Nev. July 2, 2010) .................................................... 10

19

20

*Guttman v. Huang*,
   823 A.2d 492 (Del. Ch. 2003) ...................................................................... 8, 11

21

22

*In re Accuray, Inc. S'holder Deriv. Litig.*,
   757 F. Supp. 2d 919 (N.D. Cal. 2010) .......................................................... 10

23

24

*In re Am. Apparel, Inc. S'holder Deriv. Litig.*,
   2012 WL 9506072 (C.D. Cal. July 31, 2012) ............................................... 16

25

26

*In re Am. Int'l Grp., Inc. Deriv. Litig.*,
   700 F. Supp. 2d 419 (S.D.N.Y. 2010),
   *aff'd*, 415 F. App'x 285 (2d Cir. 2011) ....................................................... 11, 16, 18, 21

27

28

*In re Baxter Int'l, Inc. S'holders Litig.*,
   654 A.2d 1268 (Del. Ch. 1995) ..................................................................... 8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

ii

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

*In re Caremark Int'l Inc. Deriv. Litig.,*
    698 A.2d 959 (Del. Ch. 1996) .......................................................13, 14, 15, 18

*In re China Auto. Sys. Inc. Deriv. Litig.,*
    2013 WL 4672059 (Del. Ch. Aug. 30, 2013)...................................................10

*In re Citigroup Inc. S'holder Deriv. Litig.,*
    964 A.2d 106 (Del. Ch. 2009) ...............................................................passim

*In re CNET Networks, Inc.,*
    483 F. Supp. 2d 947 (N.D. Cal. 2007)............................................................17

*In re Coinstar Inc. S'holder Deriv. Litig.,*
    2011 WL 5553778 (W.D. Wash. Nov. 14, 2011) ...........................................13

*In re Dow Chem. Co. Deriv. Litig.,*
    2010 WL 66769 (Del. Ch. Jan. 11, 2010) ......................................9, 15, 18, 20

*In re Edison Int'l Deriv. Litig.,*
    2016 WL 4793186 (S.D. Cal. Sept. 14, 2016) ..................................................8

*In re Extreme Networks, Inc.,*
    573 F. Supp. 2d 1228 (N.D. Cal. 2008) ..........................................................13

*In re Gen. Motors Co. Deriv. Litig.,*
    2015 WL 3958724 (Del. Ch. June 26, 2015) ..................................................15

*In re Goldman Sachs Grp., Inc. S'holder Litig.,*
    2011 WL 4826104 (Del. Ch. Oct. 12, 2011) ....................................................8

*In re Google, Inc. S'holder Deriv. Litig.,*
    2013 WL 5402220 (N.D. Cal. Sept. 26, 2013)................................................20

*In re Impax Labs., Inc. S'holder Deriv. Litig.,*
    2015 WL 5168777 (N.D. Cal. Sept. 3, 2015)...............................................8, 16

*In re Johnson & Johnson Deriv. Litig.,*
    865 F. Supp. 2d 545 (D.N.J. 2011)............................................................16, 17

*In re Maxwell Techs., Inc., Deriv. Litig,*
    2014 WL 2212155 (S.D. Cal. May 27, 2014) ..................................................21

*In re PayPal Holdings, Inc. S'holder Deriv. Litig.,*
    2018 WL 466527 (N.D. Cal. Jan. 18, 2018) ........................................10, 11, 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

iii

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

*In re Polycom, Inc. Deriv. Litig.*,
    78 F. Supp. 3d 1006 (N.D. Cal. 2015)........................................................12, 17

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ...............................................................................8

*In re Yahoo! Inc. S'holder Deriv. Litig.*,
    153 F. Supp. 3d 1107 (N.D. Cal. 2015) ......................................................passim

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991) ...............................................................................................7

*Leyte-Vidal v. Semel*,
    220 Cal. App. 4th 1001 (2013) ............................................................................7

*Oakland Raiders v. Nat'l Football League*,
    93 Cal. App. 4th 572 (2001) ................................................................................7

*Oswald v. Humphreys*,
    2016 WL 6582025 (N.D. Cal. Nov. 7, 2016) .......................................................7

*Potter v. Hughes*,  546 F.3d 1051 (9th Cir. 2008) .................................................7

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993)......................................................................................7

*Rattner v. Bidzos*,
    2003 WL 22284323 (Del. Ch. Sept. 30, 2003) ................................................10

*South v. Baker*,
    62 A.3d 1 (Del. Ch. 2012) ...........................................................................15, 16

*Stiegele v. Bailey*,
    2007 WL 4197496 (D. Mass. Aug. 23, 2007)...................................................20

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006)...................................................................................14

*Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*,
    119 A.3d 44 (Del. Ch. 2015) .......................................................................19, 21

*Wood v. Baum*,
    953 A.2d 136 (Del. 2008)..............................................................13, 16, 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATUTES**

42 U.S.C. § 1395w-4(o)(1) ................................................................................... 4

Cal. Corp. Code § 1601 ....................................................................................... 6

**RULES**

Fed. R. Civ. P. 23.1 ........................................................................................ 6, 7

**REGULATIONS**

75 Fed. Reg. 44,314 ............................................................................................ 5

77 Fed. Reg. 13,698 ............................................................................................ 5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

v

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

Nominal defendant QSI and Defendants (as defined in the Notice of Motion and Motion) move to dismiss Plaintiff's Complaint with prejudice.

## I.     INTRODUCTION

After QSI's share price fell 33% on July 26, 2012, several shareholder lawsuits followed.  Former director and second-largest shareholder Ahmed Hussein was the first to file on October 4, 2013, alleging that QSI, its former Chairman Sheldon Razin, and its former CEO and director Steven Plochocki lied to him about the Company's growth prospects and breached their fiduciary duties (the "Hussein Action").  The California Superior Court granted summary judgment in favor of defendants and dismissed the Hussein Action in 2015.  In November 2013, a group of investors filed a federal securities class action in this Court (the "Securities Class Action"), similarly alleging that QSI, Razin, Plochocki, and former CFO Paul Holt publicly misrepresented the Company's growth opportunities.  This Court dismissed the Securities Class Action, but the Ninth Circuit partially reversed.

Sensing an opportunity, Plaintiff filed this action on January 24, 2014—two months after the Securities Class Action—purportedly on behalf of QSI. Plaintiff's Complaint closely tracks the other two; in fact, it attaches the complaint from the now-dismissed Hussein Action as an exhibit.  Plaintiff contends that QSI's Board breached their fiduciary duties by (i) causing or allowing QSI to issue the alleged misstatements (the "disclosure claim"), and (ii) failing to oversee the Company or maintain a system of internal controls (the "oversight claim"). Plaintiff also claims that Razin was unjustly enriched, and that Plochocki engaged in insider trading.

Plaintiff's Complaint should be dismissed with prejudice because he has not complied with the shareholder demand requirement set forth in Federal Rule of Civil Procedure 23.1.  This requirement reflects the fundamental principle of corporate governance that a company's important business decisions should be

ᴛLATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
ORANGE COUNTY

1

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

1   made by its board of directors, not individual shareholders.  One of those important

2   decisions is whether to pursue litigation on the corporation's behalf.  For this

3   reason, shareholders like Plaintiff may pursue derivative claims only in rare

4   circumstances:  where the shareholder has made a demand to initiate litigation that

5   the board has wrongfully refused, or where demand is excused because a majority

6   of the board is incapable of considering it impartially.

7        Plaintiff did not make a demand before filing this lawsuit.  Consequently, he

8   must allege particularized facts demonstrating that a majority of QSI's Board at the

9   time he filed his Complaint—Barbarosh, Bristol, Malone, Neupert, Panner,

10   Pflueger, Plochocki, Razin, and Rosenzweig—either was interested or lacked

11   independence, and therefore was incapable of making an informed decision as to

12   whether the filing of a lawsuit was in the Company's best interest.  Plaintiff does

13   not adequately allege either prong.

14        To establish interestedness, Plaintiff must demonstrate, on a director-by-

15   director basis, that a majority of the Board faces a substantial likelihood of liability

16   with respect to at least one of his claims.  Conclusory allegations will not suffice;

17   Plaintiff must allege particularized facts—*i.e.*, dates, specific actions, and

18   knowledge—showing that the directors acted intentionally or in bad faith.  He has

19   not done so.

20        The unjust enrichment and insider trading claims address only one director

21   each (Razin for unjust enrichment, Plochocki for insider trading).  A majority of

22   the Board, therefore, cannot face a substantial likelihood on those claims.  Nor do

23   the conclusory allegations in the Complaint expose Razin or Plochocki to a

24   substantial likelihood of liability on the claims.  Plaintiff does not allege any

25   specific facts explaining how Razin profited improperly at the expense of the

26   Company.  Similarly, Plaintiff does not identify any particularized facts

27   demonstrating that Plochocki sold stock on the basis of material, non-public

28   information.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

2

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

1   Likewise, no director faces a substantial likelihood of liability on the

2   disclosure or oversight claim.  Three Board members (Malone, Neupert, and

3   Panner) joined after the alleged misconduct occurred, and thus cannot be liable as a

4   matter of law.  As to the remaining six directors (five of whom need to be found

5   interested in order to excuse demand), Plaintiff's allegations fall well short.

6   With respect to the disclosure claim, Plaintiff must plead particularized facts

7   showing—again, on a director-by-director basis—that the alleged false statements

8   were made knowingly or in bad faith.  Plaintiff does not plead any facts

9   establishing that the Board was even involved in drafting the alleged

10  misstatements, much less that any of the directors knew that the statements were

11  false or misleading.

12  With respect to the oversight claim, Plaintiff must allege particularized facts

13  demonstrating that the directors (a) utterly failed to implement any reporting

14  system or controls, or (b) having implemented those controls, consciously failed to

15  monitor or oversee them.  Plaintiff concedes that the Company had reporting

16  systems and controls in place—thereby negating any claim that it "utterly failed"

17  to adopt them.  Likewise, Plaintiff does not allege that any director consciously

18  ignored alleged deficiencies in the Company's control system.  At most, Plaintiff

19  points to two letters from the Securities and Exchange Commission ("SEC")

20  in 2012, which asked about the assumptions regarding QSI's forecasts.  But

21  Plaintiff acknowledges that the Company addressed the letters within days, and the

22  SEC took no further action.

23  Because Plaintiff has failed to establish that any director faces a substantial

24  likelihood of liability on his claims, the question of director independence need not

25  be examined:  independence is only relevant to the demand-futility analysis when

26  there exists an interested person.  Even if Plaintiff had shown that any director was

27  interested, the Complaint contains no particularized facts demonstrating that any

28  other director—let alone a majority of the other directors—was so beholden to that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

3

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

interested person that he could not impartially consider whether to bring the asserted claims.  Plaintiff baldly claims that Board members are beholden to Razin. But he does not support that assertion with facts, particularized or otherwise.  On the contrary, Plaintiff does not allege that any director even has a relationship with Razin, let alone one that is so bias-inducing that it would rebut the presumption of independence afforded to every director.  Because Razin does not face a substantial likelihood of liability, he is not interested, and there is no need to conduct an independence analysis; but even if Plaintiff had established Razin's interestedness, Plaintiff has failed to meet his burden of demonstrating that a majority of the Board at the time the Complaint was filed was beholden to Razin.

Plaintiff has not met his burden to establish demand futility, and his Complaint should be dismissed with prejudice.  If he were permitted to amend, the demand requirement would be reassessed against the current Board—the majority of whose members joined after the alleged misconduct took place and therefore cannot be liable on Plaintiff's claims.  Demand would not be futile, but amendment would be.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

QSI is a publicly-traded California corporation that develops and markets electronic health records solutions for medical and dental providers.  Compl. ¶¶ 2, 13.  In 2009, Congress passed the American Recovery and Reinvestment Act of 2009 ("ARRA"), which, among other things, provided incentives to promote the adoption of electronic healthcare record ("EHR") technology.  42 U.S.C. § 1395w-4(o)(1)(A), (E).  In 2010, the U.S. Department of Health and Human Services ("HHS") adopted rules pursuant to which medical providers that adopted certified EHR technology would be entitled to receive incentive payments between 2011

---

[1] This background is based upon the allegations and documents referenced in the Complaint and documents that the Court may consider because they are incorporated by reference or are subject to judicial notice.  The exhibits cited are attached to the Declaration of Andrew R. Gray, which is filed with this Motion.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

4

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

1   and 2013.  75 Fed. Reg. 44,314, 44,321-23 (July 28, 2010).

2       As a provider of certified EHR technology, QSI believed that ARRA would

3   spur growth.  *See* Ex. 3.  Accordingly, when QSI released its fiscal year 2011

4   results on May 26, 2011, QSI also announced that for fiscal year 2012 ("FY2012"),

5   it agreed with analysts' projections that the Company's revenue and earnings

6   would increase year-over-year.[2]  Compl. ¶ 43.  For the first three quarters of

7   FY2012, QSI experienced record growth.  *See id.* ¶ 44.  As its results surpassed

8   expectations, QSI increased its FY2012 guidance.  *See id.*  During the last month

9   of QSI's FY2012, HHS proposed delaying the roll-out of certain previously

10  adopted rules to allow "vendors to develop Certified EHR Technology."  77 Fed.

11  Reg. 13,698, 13,701 (Mar. 7, 2012).

12      On May 10, 2012, QSI announced its preliminary FY2012 results:  while the

13  Company achieved its revenue guidance, QSI missed its earnings guidance.  *See*

14  Ex. 4.  QSI explained that delays in closing certain deals had caused its earnings

15  miss.  *Id.*  QSI remained confident in its prospects, however, and announced that

16  for FY2013, the Company expected revenues and earnings to increase 20% to

17  24%, and 20% to 25%, respectively.  *Id.*; Compl. ¶ 52.  QSI reiterated the guidance

18  in connection with a proxy contest brought by Ahmed Hussein.  Compl. ¶¶ 55, 59,

19  61.

20      QSI announced its first quarter FY2013 results on July 26, 2012.  *Id.* ¶ 63.

21  While QSI's quarterly revenue increased 18% from the prior year, its earnings

22  (though positive) decreased year-over-year.  *Id.*; Ex. 6.  Because of "lower than

23  expected revenue from large, higher margin software system sales" and the

24  "evolving conditions affecting [QSI's] industry," QSI announced that it would not

25  affirm its prior guidance.  Compl. ¶ 63; Ex. 6.  QSI's share price fell 33% that day.

26  Compl. ¶ 4.

27

28  [2] QSI's FY2012 began on April 1, 2011 and ended March 31, 2012.  Its fiscal year 2013 ("FY2013") began on April 1, 2012 and ended on March 31, 2013.  *See* Compl. ¶ 47.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

5

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

1    In October 2013, Hussein filed a lawsuit against QSI, its then-CEO

2   Plochocki, and its Board Chairman Razin in California state court, alleging fraud

3   and breach of fiduciary duty in connection with the July 26, 2012 disclosure and

4   stock price decline—which, according to Hussein, forced the sale of millions of his

5   QSI shares, which he had pledged as collateral for loans. Compl. Ex. A. The court

6   granted summary judgment to defendants in September 2015. On November 19,

7   2013, the Deerfield Beach Police Pension Fund filed the Securities Class Action in

8   this Court against the Company, Plochocki, Razin, and then-CFO Paul Holt.

9   Compl. ¶ 4. The Securities Class Action similarly alleged that QSI made material

10  misstatements regarding its growth prospects and that the truth about these

11  purported misstatements became known on July 26, 2012. *See id.*[3]

12    In January 2014, Plaintiff filed this action, alleging breaches of fiduciary

13  duty, abuse of control, mismanagement, unjust enrichment, and insider trading

14  against certain members of QSI's Board. Plaintiff's allegations are premised upon

15  those set forth in the Hussein and Securities Class Actions. Before filing, Plaintiff

16  did not make a books-and-records inspection request. *See* Cal. Corp. Code § 1601.

17  Nor did he make a pre-suit demand on QSI's nine-member Board—which included

18  three members who joined the Board after the alleged misconduct occurred

19  (Neupert, Malone, and Panner). Compl. ¶¶ 79-80.

20  **III.   ARGUMENT**

21    Under Rule 23.1, a putative derivative plaintiff either must make a pre-suit

22  demand on a company's board of directors to enforce a company right, or "state

23  with particularity" the reasons why making such demand would be futile. *See* Fed.

---

24

25  [3] On October 20, 2014, this Court dismissed the Securities Class Action with prejudice. *See In re Quality Systems, Inc. Sec. Litig.*, No. 8:13-cv-01818-CJC-JPR, Dkt. No. 39 (C.D. Cal. Oct. 20, 2014). After the plaintiffs appealed, the Ninth Circuit affirmed the decision with respect to the free-standing forward-looking statements, but permitted so-called "mixed" statements containing both forward-looking and non-forward-looking components to proceed to discovery. On January 26, 2018, defendants in the Securities Class Action filed a petition for a writ of certiorari with the United States Supreme Court, requesting that the Court reevaluate the Ninth Circuit's order. Ex. 9.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

6

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

1  R. Civ. P. 23.1.  "[S]trict compliance with Rule 23.1 . . . is necessary before a

2  derivative suit can wrest control of an issue from the board of directors."  *Potter v.*

3  *Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008).

4         Where, as here, Plaintiff did not make a pre-suit demand on the Company's

5  Board, the Complaint must be dismissed unless he alleges particularized facts

6  showing that demand would have been futile under the law of the Company's state

7  of incorporation, *i.e.*, California.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S.

8  90, 108-09 (1991); *see also* Compl. ¶ 13.[4]  California courts employ two tests in

9  assessing demand futility:  (1) the *Aronson* test, which applies when the claim

10  challenges a specific board decision or action; and (2) the *Rales* test, which applies

11  in all other circumstances.  *See Bader v. Anderson*, 179 Cal. App. 4th 775, 791

12  (2009) (citing *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) and *Rales v. Blasband*,

13  634 A.2d 927 (Del. 1993)); *see also Apple, Inc. v. Superior Court*, 18 Cal. App. 5th

14  222 (2017) (same).  The inquiry under both tests is essentially identical.  *See Leyte-*

15  *Vidal v. Semel*, 220 Cal. App. 4th 1001, 1010-11 (2013).  Under either test,

16  demand is excused where particularized factual allegations "create a reasonable

17  doubt that, as of the time the complaint is filed, the board of directors could have

18  properly exercised its independent and disinterested business judgment in

19  responding to a demand."  *Bader*, 179 Cal. App. 4th at 791-92; *see also Oswald v.*

20  *Humphreys*, 2016 WL 6582025, at *1 (N.D. Cal. Nov. 7, 2016).

21         Specifically, Plaintiff must establish that a majority of the Board at the time

22  the Complaint is filed (1) is "interested"—*i.e.*, that a director's actions were "so

23  egregious . . . that . . . a substantial likelihood of . . . liability" exists with respect to

24  one of the alleged claims (*Aronson*, 473 A.2d at 815); or (2) lacks

25  "independence"—*i.e.*, "is 'beholden' to an interested director or officer, 'or so

26  under their influence that their discretion would be sterilized.'"  *Bader*, 179 Cal.

27

28  [4] In matters of corporate governance, California law is identical to Delaware law "for all practical purposes."  *See Oakland Raiders v. Nat'l Football League*, 93 Cal. App. 4th 572, 586 n.5 (2001).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

7

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

1   App. 4th at 792 (citation omitted); *see also In re Silicon Graphics Inc. Sec. Litig.*,

2   183 F.3d 970, 990 (9th Cir. 1999) (a "mere threat" of liability is insufficient to

3   establish demand futility).  To meet this standard, Plaintiff must satisfy a heavy

4   burden that is "more onerous than that required to withstand a Rule 12(b)(6)

5   motion."  *Baca v. Crown*, 2010 WL 2812697, at *5 (D. Ariz. Jan. 8, 2010).

6   Plaintiff also must overcome the presumption that directors are "faithful to their

7   fiduciary duties."  *In re Impax Labs., Inc. S'holder Deriv. Litig.*, 2015 WL

8   5168777, at *4 (N.D. Cal. Sept. 3, 2015) (citation omitted).

9        In assessing whether a director is interested, the likelihood of liability is

10   "significantly lessened" where the Company's certificate of incorporation

11   exculpates directors from liability to the extent authorized by applicable law.  *In re*

12   *Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104, at *18 (Del. Ch.

13   Oct. 12, 2011); *see also In re Edison Int'l Deriv. Litig.*, 2016 WL 4793186, at *4

14   (S.D. Cal. Sept. 14, 2016) (in assessing demand futility, court must "take[] into

15   consideration the exculpatory provisions in [company's] certificate of

16   incorporation").  Because QSI has adopted such a provision (Exs. 1-2), a

17   substantial threat of liability necessary to render a member of the Board interested

18   "may only be found to exist if the plaintiff pleads a *non-exculpated* claim against

19   the directors based on particularized facts."  *Guttman v. Huang*, 823 A.2d 492, 501

20   (Del. Ch. 2003).  This means "plaintiffs must plead particularized facts showing

21   bad faith" to establish a substantial likelihood of liability.  *Goldman*, 2011 WL

22   4826104, at *18 (citation omitted).

23        Plaintiff does not allege particularized facts sufficient to establish that any

24   Board member—let alone a majority—engaged in such "egregious" (*i.e.*, bad faith)

25   conduct that they face a substantial likelihood of liability on Plaintiff's claims.  *In*

26   *re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1271 (Del. Ch. 1995).  As a

27   result, the independence of the directors need not be examined, since that analysis

28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
ORANGE COUNTY

8

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

1    is only relevant when there exists an interested person.  *See In re Dow Chem. Co.*

2    *Deriv. Litig.*, 2010 WL 66769, at *8 & n.38 (Del. Ch. Jan. 11, 2010).

3         Even assuming Plaintiff established that a director faced a substantial

4    likelihood of liability on one of the claims, however, Plaintiff does not plead any

5    particularized facts that any Board member (much less a majority) is "beholden" to

6    that person and therefore lacks independence.  His Complaint should be dismissed

7    with prejudice.  *See, e.g.*, *In re Yahoo! Inc. S'holder Deriv. Litig.*, 153 F. Supp. 3d

8    1107, 1128 (N.D. Cal. 2015) (dismissing complaint with prejudice for failure to

9    establish demand futility).

10        **A.    Plaintiff Has Not Established That Any Director—Let Alone A Majority—Is Interested**

11        Plaintiff asserts seven causes of action:  (1) unjust enrichment against Razin;

12   (2) insider trading against Plochocki; (3) breach of fiduciary duty against all

13   Defendants for disseminating allegedly false statements; (4) breach of fiduciary

14   duty against all Defendants for failure to maintain internal controls; (5) breach of

15   fiduciary duty against all Defendants for failure to oversee the Company; (6) abuse

16   of control against all Defendants; and (7) gross mismanagement against all

17   Defendants.  To excuse demand based upon interestedness, Plaintiff must

18   demonstrate that five of QSI's nine directors face a substantial likelihood of

19   liability on his claims.  He does not do so.

20        **1.    No Director Faces A Substantial Likelihood Of Liability Based Upon The Unjust Enrichment And Insider Trading Claims**

21

22        Demand is not excused with respect to the unjust enrichment and insider

23   trading claims because they do not address a majority of the Board.  The unjust

24   enrichment claim pertains only to Razin, and the insider trading claim pertains only

25   to Plochocki.  *See* Compl. ¶¶ 104-109.  Where claims are brought against a

26   minority of directors, "a majority of the Board survives scrutiny under the demand

27   futility analysis."  *In re China Auto. Sys. Inc. Deriv. Litig.*, 2013 WL 4672059, at

28   *10 (Del. Ch. Aug. 30, 2013); *accord In re PayPal Holdings, Inc. S'holder Deriv.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

9

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

1   *Litig.*, 2018 WL 466527, at *6 (N.D. Cal. Jan. 18, 2018) (where insider trading

2   claim is brought against only one director, plaintiff could not establish demand was

3   futile because there were not "particularized facts indicating that a majority of the

4   Board would lack disinterestedness or independence in making a decision on a

5   demand as to that claim"); *Baca*, 2010 WL 2812697, at *10 (where claim was

6   asserted against less than half of the board, plaintiff did not satisfy demand futility

7   requirements); *Fosbre v. Matthews*, 2010 WL 2696615, at *7 (D. Nev. July 2,

8   2010) (same).

9          Even as to Razin and Plochocki, Plaintiff's allegations fall far short of

10   establishing a substantial likelihood of liability.  Plaintiff fails to show how Razin

11   was unjustly enriched "at the expense of" QSI.  *In re Accuray, Inc. S'holder Deriv.*

12   *Litig.*, 757 F. Supp. 2d 919, 935-36 (N.D. Cal. 2010).  Plaintiff has not pled any

13   facts—let alone particularized ones—describing what improper "profits, benefits,

14   and other compensation" Razin allegedly received.  *See* Compl. ¶ 106.  Razin

15   therefore does not face a substantial likelihood of liability on the unjust enrichment

16   claim.

17          Likewise, Plaintiff's claim that Plochocki sold QSI stock "at inflated prices"

18   cannot establish interestedness under settled law, which requires particularized

19   allegations demonstrating "that the challenged sales were executed upon the basis

20   and because of non-public information."  *See Rattner v. Bidzos*, 2003 WL

21   22284323, at *12 (Del. Ch. Sept. 30, 2003).  Plaintiff states that Plochocki sold

22   QSI stock while possessing "undisclosed information" at some point over a three-

23   year period.  Compl. ¶ 5.  Plaintiff does not make any allegations regarding the

24   timing of Plochocki's sales or his previous sales patterns—facts necessary to

25   determine whether the challenged sales were suspicious.  Nor does Plaintiff plead

26   any specific facts supporting an inference that Plochocki made the trades "upon the

27   basis and because of" material non-public information.  *Rattner*, 2003 WL

28   22284323, at *12.  Plaintiff's conclusory allegations lack the particularity required

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

10

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

to render Plochocki interested on this claim.  *See Guttman*, 823 A.2d at 502 (declining to find that a director is interested based on cursory allegations "that he made sales of company stock in the market at a time when he possessed material, non-public information"); *PayPal*, 2018 WL 466527, at *6 (dismissing claim where "plaintiffs rely upon conclusory statements about 'suspicious' sales based on knowledge derived from being a member of [the company's] board").

### 2.    No Director Faces A Substantial Likelihood Of Liability Based Upon The Disclosure Claim

Plaintiff contends that QSI's Board of directors breached their fiduciary duties, or otherwise abused their positions of control, by "causing or allowing the Company to disseminate materially misleading and inaccurate information."  *See* Compl. ¶¶ 83, 96 (regarding Counts I, IV).[5]  In order to show a substantial likelihood of liability based upon a disclosure claim, Plaintiff must plead particularized facts identifying "which disclosures were misleading, when the Company was obligated to make disclosures, what specifically the Company was obligated to disclose, . . . how the Company failed to do so," and how the directors "made disclosures with knowledge that they were false or misleading or in bad faith."  *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 132-33 & n.88 (Del. Ch. 2009).  Plaintiff has not shown any of this.

Three of the directors (Malone, Neupert, and Panner) joined the Board in 2013—well after QSI made the alleged misstatements.  Compl. ¶¶ 16-18.  They cannot face any liability with respect to this claim.  *See In re Am. Int'l Grp., Inc. Deriv. Litig.*, 700 F. Supp. 2d 419, 440 (S.D.N.Y. 2010) (where directors "joined the Board after [the alleged misstatements were made] none of them faces any potential for liability"), *aff'd*, 415 F. App'x 285 (2d Cir. 2011).

Plaintiff's allegations regarding the remaining six directors (Barbarosh,

---

[5] Because Plaintiff's abuse-of-control claim simply repackages his breach of fiduciary duty claim under a different name, it is appropriate to consider the two claims together.  *See, e.g.*, *Clark v. Lacy*, 376 F.3d 682, 687 (7th Cir. 2004).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

11

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

Bristol, Rosenzweig, Pflueger, Razin, Plochocki) likewise are deficient.  Plaintiff states repeatedly that these directors "caus[ed] or allow[ed] the Company to disseminate materially misleading and inaccurate information."  Compl. ¶¶ 83, 96. Under settled law, however, alleging that directors "'caused or allowed' the Company to issue certain statements is not sufficient particularized pleading to excuse demand[.]"  *Citigroup*, 964 A.2d at 133 n.88.  Plaintiff must—but has failed to—make particularized allegations regarding "how the board was actually involved in creating or approving the statements," or specific allegations that any of the directors "made disclosures with knowledge that they were false or misleading or in bad faith."  *Id.*  In fact, Plaintiff has not "made any specific allegations about the [directors'] state of mind at all."  *See In re Polycom, Inc. Deriv. Litig.*, 78 F. Supp. 3d 1006, 1016 (N.D. Cal. 2015).  Absent "particularized allegations explaining what the Directors knew, when they knew it, or anything more than 'general allegation[s] that the Board participated' in making or causing false or misleading statements to be made," there can be no inference "that the board acted in bad faith, knowingly, or with intent to deceive."  *Id.* at 1017 (citations omitted).  In other words, because Plaintiff does not provide a basis to infer that Defendants "knew about [the Company's] alleged wrongdoings at the time the challenged statements were issued, [he] cannot show that a majority of the Board faced a substantial likelihood of liability."  *See PayPal*, 2018 WL 466527, at *6.

Plaintiff also claims—incorrectly—that Razin, Barbarosh, Bristol, Rosenzweig, Pflueger, and Plochocki face a substantial likelihood of liability because they served on a "Special Committee that was responsible for the Company's Proxy Materials and all signed the June 26, 2012 letter containing [allegedly] misleading guidance."  Compl. ¶ 80(b)-(c).  As an initial matter, QSI's

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

12

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

SEC filings (upon which Plaintiff's claims are based (Compl. at 1[6])) make clear that Barbarosh, Rosenzweig, and Plochocki did *not* serve on the Committee. *See* Ex. 5.  In any event, it is well-settled that directors do not have "a culpable state of mind" based on committee service alone. *See Wood v. Baum*, 953 A.2d 136, 142-43 (Del. 2008).  Plaintiff does not allege any particularized facts suggesting that the Special Committee "had an actual role in the alleged misstatements or that the Committee knew of inaccuracies in the challenged statements." *In re Coinstar Inc. S'holder Deriv. Litig.*, 2011 WL 5553778, at *4 (W.D. Wash. Nov. 14, 2011). Likewise, that certain directors "'signed' or were involved in 'reviewing' the disclosures at issue" does not excuse demand, as those allegations are insufficient to create an inference that the directors had actual or constructive notice of any illegality. *See Yahoo!*, 153 F. Supp. 3d at 1120; *see also In re Extreme Networks, Inc.*, 573 F. Supp. 2d 1228, 1241 (N.D. Cal. 2008) ("[A] director's execution of financial reports, without more, is insufficient to create an inference that he had actual or constructive notice of any illegality.").

### 3. No Director Faces A Substantial Likelihood Of Liability Based Upon The Oversight Claim

Plaintiff next alleges that the Defendants failed to maintain internal controls or exercise proper oversight.  Compl. ¶¶ 85-94, 100-103 (regarding Counts II, III, V).[7]  These allegations—though styled as separate counts—constitute what is commonly referred to as a *Caremark* claim.  *See Yahoo!*, 153 F. Supp. 3d at 1121 (analyzing claims that board disregarded their duty to oversee the company and

---

[6] It is appropriate for the Court to consider QSI's public filings and other documents incorporated by reference to Plaintiff's Complaint in ruling on the Motion to dismiss for the reasons set forth in Defendants' accompanying Request That the Court Consider Documents Incorporated by Reference or Subject to Judicial Notice.

[7] Plaintiff's "gross mismanagement" claim is not an independent cause of action, but rather is properly treated as a breach of fiduciary duty claim. *See Citigroup*, 964 A.2d at n. 6 ("These common law [breach of fiduciary duty] standards govern the duties that directors and officers owe the corporation as well as claims such as those for 'reckless and gross mismanagement,' even if those claims are asserted separate and apart from claims of breach of fiduciary duty.") (citations omitted).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

13

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

1  failed to maintain internal controls as a *Caremark* claim); *see also In re Caremark*
2  *Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).

3          To excuse demand based upon a *Caremark* claim, Plaintiff must plead
4  particularized facts showing that "'(a) the directors utterly failed to implement any
5  reporting or information system or controls; <u>or</u> (b) having implemented such a
6  system or controls, consciously failed to monitor or oversee its operations, thus
7  disabling themselves from being informed of risks or problems requiring their
8  attention.'"  *Yahoo!*, 153 F. Supp. 3d at 1121 n.7 (quoting *Stone v. Ritter*, 911 A.2d
9  362, 370 (Del. 2006)).  Under both *Caremark* prongs, "imposition of liability
10  requires a showing that the directors knew that they were not discharging their
11  fiduciary obligations."  *Stone*, 911 A.2d at 370.  Only a "sustained or systematic
12  failure of the board to exercise oversight . . . will establish the lack of good faith
13  that is a necessary condition to liability."  *Caremark*, 698 A.2d at 971.  As a result,
14  in order to state a viable *Caremark* claim, and to predicate a substantial likelihood
15  of director liability on it, a plaintiff must plead the existence of facts suggesting
16  that the directors' "indolence was so persistent that it could not be ascribed to
17  anything other than a knowing decision not to even try to make sure the
18  corporation's officers had developed and were implementing a prudent approach to
19  ensuring law compliance."  *Desimone v. Barrows*, 924 A.2d 908, 935 (Del. Ch.
20  2007).  For this reason, a *Caremark* claim has been described as "possibly the most
21  difficult theory in corporation law upon which a plaintiff might hope to win a
22  judgment."  *Citigroup*, 964 A.2d at 125 (citation omitted).  Plaintiff comes
23  nowhere close to meeting the rigorous *Caremark* standard.

24          **a.    Plaintiff Admits That QSI Maintained A System Of Internal Controls**

25          Plaintiff's own allegations refute any assertion that the Board "utterly failed"
26  to implement internal controls.  He concedes that the Company established a Code
27  of Business Conduct that (i) required its employees to "respect and obey the laws
28  of the cities, states and countries in which [it] operate[s]" (Compl. ¶ 30), and (ii)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

14

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

1  prohibited employees from trading in QSI stock on the basis of material, non-

2  public information (*id*. ¶ 32). Plaintiff also acknowledges that the Company had an

3  Audit Committee that was responsible for, among other things, determining

4  whether there were "any significant deficiencies in the design or operation of

5  internal controls or material weaknesses therein and any fraud involving

6  management or other employees who have a significant role in the Company's

7  internal controls." *Id*. ¶ 33.

8        These admissions "do not support an inference of an 'utter failure to attempt

9  to assure a reasonable information and reporting system exists,' but rather the

10  opposite: an evident effort to establish a reasonable system." *South v. Baker*, 62

11  A.3d 1, 18 (Del. Ch. 2012) (quoting *Caremark*, 698 A.2d at 971); *see also*

12  *Polycom*, 78 F. Supp. 3d at 1015 (by acknowledging the "existence of [the

13  company's] Audit Committee," plaintiff admitted that "internal controls were in

14  place throughout the relevant period"); *Dow Chem.*, 2010 WL 66769, at *13 n.85

15  ("Plaintiffs cannot simultaneously argue that the [company's] board 'utterly failed'

16  to meet its oversight duties yet had 'corporate governance procedures' in place").

17  Plaintiff's allegations—that the level of oversight may have been inadequate in

18  hindsight—falls well short of pleading that there was an utter failure to implement

19  controls. *See In re Gen. Motors Co. Deriv. Litig.*, 2015 WL 3958724, at *15 (Del.

20  Ch. June 26, 2015) (allegations that there was "*some* oversight, albeit not to the

21  Plaintiffs' hindsight-driven satisfaction" did not satisfy *Caremark* burden).

22              **b.    Plaintiff Does Not Allege That The Board Consciously
                        Disregarded Its Duties**

23        Nor does Plaintiff allege that the Board consciously failed to monitor the

24  Company's operations. Demand is excused under this *Caremark* prong where

25  Plaintiff pleads "with particularity that there were so-called 'red flags' that put the

26  directors on notice of problems with their systems, but which were consciously

27  disregarded." *Yahoo!*, 153 F. Supp. 3d at 1121 (citation omitted).

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

15

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

Plaintiff has not pled any facts showing the existence of red flags that put the Board on notice of "serious misconduct" or "evidence of illegality." *Baker*, 62 A.3d at 15.  At most, Plaintiff identifies two SEC comment letters from 2012 asking QSI to describe the assumptions underlying the FY2013 projections in its proxy materials.  *See* Compl. ¶¶ 57, 59.  But red flags "are only useful when they are either waved in one's face or displayed so that they are visible to the careful observer." *Wood*, 953 A.2d at 143 (citation omitted).  Plaintiff does not allege that the directors received the letters, much less explain how the letters could have alerted the Board to systemic deficiencies in the Company's internal controls.  *See In re Am. Apparel, Inc. S'holder Deriv. Litig.*, 2012 WL 9506072, at *26 (C.D. Cal. July 31, 2012) (demand was not futile where the board was not alerted that there was "a high likelihood" that the company was violating the law but failed to rectify the behavior).  On the contrary, the letters did not claim that QSI violated any laws and did not "shed light on whether the [Company] actually engaged in misconduct." *In re Johnson & Johnson Deriv. Litig.*, 865 F. Supp. 2d 545, 566 (D.N.J. 2011).  They do not constitute red flags.  *See Impax*, 2015 WL 5168777, at *3, *5 (FDA Form 483s were not "red flags" because they "simply informed . . . of 'conditions that *may* constitute violations of the law'"); *Baker*, 62 A.3d at 15 (describing "red flags" as "evidence of illegality" or "notice of serious misconduct").

Furthermore, even if the SEC comment letters constituted red flags (they do not), none of the Board members faces a substantial likelihood of liability for consciously disregarding them.  First, three of the directors (Malone, Neupert, and Panner) joined the Board after QSI received and responded to the letters (Compl. ¶¶ 17-19), and thus face no liability with respect to this claim.  *See Yahoo!*, 153 F. Supp. 3d at 1128 n.14 (directors do not face a substantial likelihood of liability where they "joined the board after the events at issue in this litigation"); *Am. Int'l Grp.*, 700 F. Supp. 2d at 440 (where directors "all joined the Board after the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

16

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

1  [alleged wrongdoing] had been concluded," they do not face a substantial

2  likelihood of liability).  Plaintiff's conclusory assertion that these directors

3  "ratified" the alleged misconduct (Compl. ¶ 28) does not expose them to liability

4  because the Complaint provides no details about the supposed ratification.  *See In*

5  *re CNET Networks, Inc.*, 483 F. Supp. 2d 947, 963-64 (N.D. Cal. 2007)

6  (conclusory allegations that directors "ratified" misconduct are insufficiently

7  particularized).

8        Second, QSI did not disregard the letters.  As Plaintiff acknowledges, QSI

9  "filed a revised preliminary proxy statement attempting to address the SEC's"

10  comments.  *See* Compl. ¶ 59.  In other words, Plaintiff's own allegations

11  acknowledge that the Company "was responding appropriately" to the SEC's

12  comment letters—not ignoring them.  *See Johnson & Johnson*, 865 F. Supp. 2d at

13  566.  Indeed, after receiving QSI's responses, the SEC took no further action.

          **c.**    **Service On Board Committees Does Not Support An Inference That Any Director Consciously Disregarded His Duties**

16        Finally, Plaintiff's allegation that Bristol and Pflueger are "interested" or

17  "conflicted" due to their service on QSI's Audit Committee (Compl. ¶ 80(e)) is

18  contrary to well-established law, which does not permit an inference of culpability

19  based solely on committee membership.  *Wood*, 953 A.2d at 142 ("Plaintiff also

20  asserts that membership on the Audit Committee is a sufficient basis to infer the

21  requisite scienter.  That assertion is contrary to well-settled Delaware law.");

22  *accord Polycom*, 78 F. Supp. 3d at 1020.  Plaintiff does not allege with

23  particularity any of the facts necessary to establish liability based upon committee

24  service—including when the committee convened, what each director learned

25  regarding the alleged misconduct by serving on the committee, and how each

26  director consciously and in bad faith failed to discharge his fiduciary obligations in

27  light of such knowledge.  *See Yahoo!*, 153 F. Supp. 3d at 1122; *Polycom*, 78 F.

28  Supp. 3d at 1020; *Citigroup*, 964 A.2d at 134.  Plaintiff has not pled any facts

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

17

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

1   demonstrating that any Board member systematically and in bad faith failed to

2   exercise oversight under the stringent *Caremark* standard.

3   **B.    Plaintiff Has Not Established That Any Director Lacks Independence**

4   Because Plaintiff has failed to establish that any director is interested (*i.e.*,

5   faces a substantial likelihood of liability with respect to at least one of the claims),

6   the independence of the Board members "need not be examined," as that issue "is

7   only relevant [to the demand-futility analysis] when there exists an interested

8   person." *Dow Chem.*, 2010 WL 66769, at *8 & n.38; *see also Bader*, 179 Cal.

9   App. 4th at 792 (director lacks independence only where the "director is

10  'beholden' to an interested director or officer, 'or so under [the interested director's

11  or officer's] influence that their discretion would be sterilized'") (citation omitted).

12  In any event, even if Plaintiff adequately had alleged that any director was

13  interested, he fails to establish that any other director lacks independence, *i.e.*, that

14  he is beholden to, or controlled by, an interested person. *See Am. Int'l Grp.*, 700 F.

15  Supp. 2d at 435 (allegations that directors are beholden to another "does not further

16  Plaintiff's demand futility claim" where person is not found to be interested).

17  **1.    Plaintiff's Conclusory Assertion That QSI's Directors Are Beholden To Razin Does Not Raise A Reasonable Doubt As To Their Independence**

18

19  Plaintiff contends that the directors were beholden to one person:  Razin.

20  *See* Compl. ¶¶ 7, 80.  This means that the independence inquiry rests entirely on

21  Plaintiff's allegations surrounding individual directors' relationships with, and

22  alleged domination by, Razin.  The Complaint says nothing about Razin's

23  relationship with any director—and instead contains sweeping statements about

24  Razin's alleged control over all of them.  Plaintiff's assertion that the Board is

25  "entangled in a web of corporate interests built around Defendant Razin" is long on

26  rhetoric, but devoid of particularized facts necessary to rebut the presumption of

27  independence afforded every director. *Id.* ¶ 80(a); *see also Teamsters Union 25*

28  *Health Servs. & Ins. Plan v. Baiera*, 119 A.3d 44, 59 (Del. Ch. 2015).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

18

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

1    In order to show a lack of independence, Plaintiff's Complaint must create a

2  "reasonable doubt" that a director is so beholden to an interested director (which

3  Plaintiff claims is Razin) that his or her "discretion would be sterilized." *Beam v.*

4  *Stewart*, 845 A.2d 1040, 1050 (Del. 2004).  The relationship "must be of a bias-

5  producing nature"—allegations of a mere personal friendship or business

6  relationship are insufficient to raise a reasonable doubt about an individual

7  director's independence.  *Id.*

8    In *Beam*, for example, the plaintiff could not establish that directors of

9  Martha Stewart Living Omnimedia were beholden to Stewart, who owned 94% of

10  the company's shares.  845 A.2d at 1051.  According to the Delaware Supreme

11  Court, allegations that Stewart and other directors "moved in the same social

12  circles, attended the same weddings, developed business relationships before

13  joining the board, and described each other as 'friends,' even when coupled with

14  Stewart's 94% voting power," were insufficient to rebut the presumption of

15  independence.  *Id.*

16    Plaintiff's allegations are far less detailed than those dismissed in *Beam*.

17  Plaintiff does not allege that a single Board member has a relationship with Razin,

18  much less one that is "so substantial that [the director] would be more willing to

19  risk his or his reputation than risk the relationship." *Bader*, 179 Cal. App. 4th at

20  834 (citing *Beam*, 845 A.2d at 1052).  Instead, Plaintiff lifts allegations from the

21  complaint in the Hussein Action—which was dismissed over two years ago—and

22  baldly claims that in 2004, Razin "orchestrated the appointment of a new slate of

23  directors beholden to him."  Compl. ¶ 69 (citing complaint in Hussein Action).

24  Plaintiff never identifies who these directors were, the factual basis for his claim

25  that they were "beholden" to Razin at the time of their appointment—or indeed,

26  that they remained "beholden" throughout the ensuing decade—or whether they

27  remained on the Board at the time Plaintiff filed his Complaint.  Most importantly,

28  Plaintiff does not plead any facts supporting an inference that Razin's relationship

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

19

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

1    with any director serving on the Board at the time of Plaintiffs' Complaint was "so

2    close that [their] independence may *reasonably* be doubted." *Beam*, 845 A.2d

3    at 1051.

### 2. Razin's Share Ownership And Plochocki's Employment At QSI Do Not Raise A Reasonable Doubt As To Their Independence

6        Plaintiff incorrectly contends that Razin lacks independence because he

7    holds approximately 17% of the Company's stock.  Compl. ¶¶ 21, 80(b).  As

8    explained above, independence in the demand-futility context relates only to

9    whether a director is beholden to another person who faces a substantial likelihood

10   of liability.  *See In re Google, Inc. S'holder Deriv. Litig.*, 2013 WL 5402220, at *7

11   (N.D. Cal. Sept. 26, 2013) ("[T]he only relevant question [in assessing

12   independence] is whether Page and Brin are independent from Schmidt, as

13   Schmidt is the only director who can be considered 'interested.'").  The fact that

14   Razin owns a significant number of shares says nothing about whether he is

15   beholden to an interested person.  Rather, the only reasonable inference that can be

16   drawn is that he is an "economically rational individual whose priority is to protect

17   the value of his . . . shares." *Stiegele v. Bailey*, 2007 WL 4197496, at *15 (D.

18   Mass. Aug. 23, 2007) (citation omitted).

19       Likewise, Plaintiff alleges that Plochocki lacks independence because

20   Plochocki received "substantial monetary compensation" from QSI as its CEO.

21   Compl. ¶ 80(d).  This, again, suggests that Plochocki is beholden to the

22   Company—not to an interested person.  *See Dow Chem.*, 2010 WL 66769, at *8

23   ("[P]laintiffs allege that the three inside directors . . . depend for their livelihood on

24   [the company] . . . [W]here a director is beholden to the *company* there is no reason

25   to doubt her loyalty to that company.").  Indeed, Plochocki's position "merely

26   indicates that his interests were aligned with the corporation's interests, and is not

27   a ground for challenging his disinterestedness." *See Am. Int'l Grp.*, 700 F. Supp.

28   2d at 434; *Dow Chem.*, 2010 WL 66769, at *8 (management's "interests are

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

20

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

aligned with the company and presumably she is able to make decisions in the best interests of the company") (citation omitted).  That Plochocki was not considered independent under NASDAQ rules "does not bear upon independence for demand futility purposes.  The two standards are completely different."  *In re Maxwell Techs., Inc., Deriv. Litig.*, 2014 WL 2212155, at *6 (S.D. Cal. May 27, 2014); *see also Baiera*, 119 A.3d at 61 ("a board's determination of director independence under the NYSE Rules is qualitatively different from, and thus does not operate as a surrogate for, this Court's analysis of independence" for demand futility purposes).

### C.     Plaintiff's Complaint Should Be Dismissed With Prejudice

Plaintiff's Complaint should be dismissed with prejudice because he cannot establish that demand on QSI's current Board is futile.  If granted leave to amend, Plaintiff must "plead demand futility against [the Company's] current board of directors," not the Board sitting at the time he filed the Complaint in 2014.  *See Yahoo!*, 153 F. Supp. 3d at 1128 n.14.

A majority of QSI's current Board joined after the events described in the Complaint, and cannot face any liability on Plaintiff's claims.  *See id.*  ("[D]emand plainly could not be excused given that, with [one] exception . . . all of [the] current directors joined the board after the events at issue in this litigation."); *see also* Exs. 7-8 (five of QSI's nine directors joined the Board after the events at issue).  Plaintiff therefore cannot identify "facts that indicate amendment could cure the defects in the Complaint."  *Yahoo!*, 153 F. Supp. 3d at 1128 n.14; *see also Apple*, 18 Cal. App. 5th 222, at *9 ("[W]hen a trial court declares derivative claims to be legally insufficient and grants leave to amend, the demand requirement must be reassessed against the disinterest and independence of the board of directors in place when the amended derivative claims are filed.").  Dismissal with prejudice is appropriate.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

21

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

1

## IV.    CONCLUSION

2        For the reasons stated, the Complaint should be dismissed with prejudice.

3

4    Dated:  February 2, 2018                    LATHAM & WATKINS LLP

5                                               By:  /s/ Andrew R. Gray
                                                    Andrew R. Gray
6
                                               Attorneys for Nominal Defendant
7                                              Quality Systems, Inc. and Defendants
                                               Craig A. Barbarosh, George H. Bristol,
8                                              James C. Malone, Peter M. Neupert,
                                               Morris Panner, D. Russell Pflueger,
9                                              Steven T. Plochocki, Sheldon Razin, and
                                               Lance E. Rosenzweig
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

22

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR