1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GLANCY PRONGAY**
 **& MURRAY LLP**
Lionel Z. Glancy (#134180)
Kara M. Wolke   (#241521)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com
*Liaison Counsel for Plaintiffs*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY J. FOSS, Derivatively on Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CRAIG A. BARBAROSH, GEORGE H. BRISTOL, JAMES C. MALONE, PETER M. NEUPERT, MORRIS PANNER, D. RUSSELL PFLUEGER, STEVEN T. PLOCHOCKI, SHELDON RAZIN, and LANCE E. ROSENZWEIG, <br><br> Defendants, <br><br> and <br><br> QUALITY SYSTEMS, INC., <br><br> Nominal Defendant. | Case No. 8:14-cv-00110-CJC-JPR <br><br> (Derivative Action) <br><br> **PLAINTIFF TIMOTHY J. FOSS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FOSS VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br> Date:    April 16, 2018 <br> Time:    1:30 p.m. <br> Crtm:    Courtroom 9B, 9th Floor <br> Judge:   Hon. Cormac J. Carney |

1

2

# **TABLE OF CONTENTS**

I.      INTRODUCTION .......................................................................... 1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY ........................ 3

        A.     The Parties.................................................................. 3

        B.     Defendants' Misleading Financial Guidance.......................... 6

        C.     The Truth Emerges....................................................... 8

        D.     Defendants Knowingly Made  Inaccurate Financial
               Projections................................................................. 9

        E.     Procedural History ....................................................... 9

III.    ARGUMENT ............................................................................ 12

        A.     Legal Standards Governing Demand Futility ....................... 12

        B.     The Complaint Alleges With Particularity Facts That
               Create A Reasonable Doubt That The Majority Of The QSI
               Board Could Disinterestedly Consider A Demand.............................. 15

               1.     The Complaint Sufficiently Alleges That The Board
                      Members Face A Substantial Likelihood Of Personal
                      Liability For Breaching The Fiduciary Duty Of
                      Loyalty ......................................................... 15

                      a.     The Majority Of Directors Signed The June
                             26, 2012 Letter................................... 15

                      b.     The Majority Of Directors Voted To End The
                             Investigation Into Razin's Continued
                             Payments of  Medical and Life Insurance........................ 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

      c.     The Majority Of Directors Were Appointed By Razin To Sit On a Special Committee And Act Without Full Board Authorization ........................... 17

      d.     Razin Was Responsible For Many of The Alleged Wrongful Acts ..................................... 18

      e.     Plochocki Made Many Misrepresentations And Profited From Doing So ........................... 18

      f.     The Audit Committee (Bristol, Barbarosh, Pflueger, And Rosenweig) Were Responsible For The Disclosure Of The Failed Guidance .................. 20

    2.     Hussein And SEC Warning Letters Placed Defendants On Notice Of Wrongdoing ..................................... 22

 C.    QSI's Exculpatory Charter Provision Does Not Aid The Defendants ............................................................. 24

IV.    CONCLUSION ........................................................... 25

1

## **TABLE OF AUTHORITIES**

2

3    <u>CASES</u>

4

*Allergia, Inc. v. Boubolis,*

5        229 F. Supp. 3d 1150 (S.D. Cal. 2017) ...................................................... 13

6

*Aronson v. Lewis,*

7        473 A.2d 805 (Del. 1984) .............................................................. 13, 14

8

*Cahill v. Liberty Mut. Ins. Co.,*

9        80 F.3d 336 (9th Cir.1996) .................................................................. 12

10

*David B. Shaev Profit Sharing Account v. Armstrong,*

11        2006 Del. Ch. LEXIS 33 (Del. Ch. Feb. 13, 2006) ................................ 20

12

*Desaigoudar v. Meyercord,*

13        108 Cal. App. 4th 173 (Cal. App. 6th Dist. 2003)................................... 24

14

*Endurance Med., Inc. v. Smith & Nephew, Inc.,*

15        2016 WL 8856660 (C.D. Cal. Sept. 27, 2016) ....................................... 25

16

*Equity Capital Growth Fund, L.P. v. Clegg,*

17        C.A. No. 14995, 1997 Del. Ch. LEXIS 59 (Del. Ch. Apr. 21, 1997) .................. 14

18

*Gordon v. Bindra,*

19        2014 U.S. Dist. LEXIS 77620 (C.D. Cal. June 5, 2014)................................ 24, 25

20

*In re Brocade Comm. Sys. Deriv. Litig.,*

21        615 F. Supp. 2d 1018 (N.D. Cal. 2009).................................................... 21

22

*In re Caremark Int'l Inc. Deriv. Litig.,*

23        698 A.2d 959 (Del. Ch. 1996) ............................................................. 22

24

*In re infoUSA, Inc. S'holders Litig.,*

25        953 A.2d 963 (Del. Ch. 2007) ............................................................. 14

26

*In re Intuitive Surgical S'holder Deriv. Litig.,*

27        146 F. Supp. 3d 1106 (N.D. Cal. Nov. 2015).................................... 13, 14

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re PMC-Sierra, Inc. Derivative Litig.*,
    No. C 06-05330 RS, 2007 WL 2427980 (N.D. Cal. Aug. 22, 2007) ....................12

*In re Student Loan Corp. Deriv. Litig.*,
    2002 Del. Ch. LEXIS 7 (Del. Ch. Jan. 8, 2002) ......................................................19

*In re Tyson Foods, Inc. Consol. S'holder Litig.*,
    919 A.2d 563 (Del. Ch. 2007) ...............................................................................19

*In re Veeco Instruments, Inc. Sec. Litig.*,
    434 F. Supp. 2d 267 (S.D.N.Y. 2006) .......................................................14, 21, 22

*Kamen v. Kemper Fin. Servs.*,
    500 U.S. 90 (1991) ..................................................................................................12

*McCall v. Scott*,
    239 F.3d 808 (6th Cir. 2001) ............................................................................14, 22

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Tech., Inc.*,
    854 A.2d 121 (Del. Ch. 2004) ..............................................................................1, 3

*Mizel v. Connelly*,
    1999 Del. Ch. LEXIS 157 (Del. Ch. July 22, 1999)...............................................19

*Oakland Raiders v. NFL*,
    93 Cal. App. 4th 572 (2001) ...................................................................................12

*Oswald v. Identiv, Inc.*,
    No. 16-cv-00241-CRB, 2017 WL 4877423 (N.D. Cal. Oct. 27, 2017) ................14

*Pirelli Armstrong Tire Corp. Med. Benefits Trust v. Stumpf*,
    No. C11-2369 SI, 2012 U.S. Dist. LEXIS 16066 (N.D. Cal. 2011) ......................15

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) .................................................................................13, 19

*Rosenbloom v. Pyott*,
    765 F.3d 1137 (9th Cir. 2014) .............................................................11, 13, 14, 20

*Small v. Fritz Cos., Inc.*,
    (2003) 30 Cal. 4th 167 ........................................................................... 10

*Wiley v. Stipes*,
    595 F. Supp. 2d 179 (D.P.R. 2009) ....................................................... 23

STATUTES

Cal. Corp. Code § 204(a)(10) ....................................................... 24, 25

Cal. Corp. Code § 204(a)(10)(iii) ........................................................ 25

Cal. Corp. Code § 800(b)(2) ............................................................... 12

RULES

Fed. R. Civ. P. 12(b)(6) ...................................................................... 12

Fed. R. Civ. P. 15(a)(2) ....................................................................... 25

Fed. R. Civ. P. 23.1 ..................................................................... 2, 3, 12

Plaintiff Timothy J. Foss ("Plaintiff"), submits this memorandum in opposition to the motion to dismiss his Verified Shareholder Derivative Complaint (the "Motion").

## I.  <u>INTRODUCTION</u>

Plaintiff brings this stockholder derivative action (the "Action") on behalf of nominal defendant Quality Systems, Inc. ("QSI" or the "Company") against members of QSI's Board of Directors (the "Board") (collectively, the "Individual Defendants" and together with QSI, the "Defendants") who have made or knowingly permitted inflated revenue projections.  Specifically, Defendants repeatedly made baseless projections in 2011 and 2012, ignoring both internal warnings and red flags raised by the United States Securities and Exchange Commission ("SEC") to Defendants.[1]

Though the Individual Defendants were and are aware that QSI's guidance without a good faith basis, they have taken no corrective action to correct the misrepresentations contrary to their fiduciary obligations.  This is not surprising as a majority of the Board is implicated by Plaintiff's particularized allegations of wrongdoing, which the Ninth Circuit has twice found state a claim for securities fraud.  As a result, and with QSI lacking any other recourse, Plaintiff, by this Action,

---

[1] "[A] fiduciary may not choose to manage an entity in an illegal fashion, even if the fiduciary believes that the illegal activity will result in profits for the entity." *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Tech., Inc.*, 854 A.2d 121, 131 (Del. Ch. 2004).

seeks to remedy the Individual Defendants' breaches of fiduciary duties, failure to maintain internal controls, abuse of control, gross mismanagement, unjust enrichment, and insider selling.

Defendants have moved to dismiss Plaintiff's Verified Derivative Complaint (the "Complaint")[2] pursuant to Federal Rule of Civil Procedure 23.1, arguing that Plaintiff Foss has not adequately pled that a demand on the Board would have been futile. Defendants' argument fails because the Complaint alleges with particularity that a majority of the Board actively participated in and were directly aware of a pervasive scheme to manipulate the reporting of the Company's financial condition and future prospects, in part by taking the unusual step of sending a special letter to all QSI stockholders in June 2012 signed by the majority of the Board members. ¶¶ 5, 55. Plaintiff further alleges that Defendant Sheldin Razin ("Razin") a founder of the Company, its largest shareholder, and the Board's Chairman, dominated the Board and used such control for his own personal benefit. ¶¶ 69, 70.

As a result of the majority of the Board's serious misconduct, pre-suit demand upon the Board to take action against the individual board members would have been futile. The majority of the Board members were active participants in the wrongdoing, beholden to Defendant Razin, and faced a substantial likelihood of personal liability for breaching their duty of loyalty. Accordingly, demand would

---

[2] References to the *Foss* complaint (Doc. No. 1) are cited to herein as "¶ _."

have been and is futile under Rule 23.1, and Defendants' Motion to Dismiss should be denied in its entirety.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.   The Parties

Plaintiff Foss has been a shareholder of QSI at all relevant times.  ¶ 12.  QSI, a California corporation based in Irvine, California, designs and creates information systems and management software for medical and dental practices.  ¶¶ 2 and 13.  At the time of filing this action, QSI had a nine-member Board comprised of:

**a.   Defendant Razin**:  QSI's founder and largest stockholder, who acted as Chairman of the QSI Board since 1974.  ¶ 21.  Razin was the CEO until March 2000 when his employment was terminated as a result of an undisclosed attempt to sell the Company without the Board's knowledge.  *Id.* Razin, despite knowing growth projections were false, nonetheless signed shareholder letters and public filings containing the false guidance.  ¶¶ 2, 55, 61, 80(d).  Razin chaired a "Special Committee," the members of whom he selected, formed to rebuff the proxy contest lodged by former director Amhed Hussein ("Hussein").  ¶¶ 74, 75.  Razin signed a June 26, 2012 letter affirming guidance that was disavowed less than one month later.  ¶ 55;

**b.   Defendant Plochocki**:  A QSI director since 2004 and served as the Company's President since January 2012.  Plochocki was named CEO in

2008.   ¶ 20.   Plochocki was a principal spokesman for QSI touting the inaccurate growth projections all the while knowing that such projections were false and signed many of the public filings containing the false guidance.  ¶¶ 20, 41, 43-47, 48-51, 54, 55, 61, 80(d).  Plochocki used non-public knowledge about QSI's to his own benefit by timing the sale of Company stock at an inflated price garnering $3,893,115.  ¶ 5.  He admitted that the extent of the financial overstatement was actually a "negotiation" with Razin (when confronted about the issue; Plochocki replied that "he had authorized the prior projections because they were 'even less than Shelly [Razin] wants.'").  ¶ 7.  Plochocki was on the QSI board in 2010 when a whistleblower raised the issue concerning payment of health and life insurance benefits to Razin and his wife was made despite Razin no longer being a QSI employee after 2000 and a severance agreement preventing such payments.  ¶ 72;

c.   **Defendant Pflueger**:  A QSI director since 2006 and a member of several formal board committees including the audit committee and the "Special Committee" formed by Razin to rebuff the proxy contest lodged by former director Hussein.  ¶¶ 19, 74, 80(e).  Pflueger signed the June 26, 2012 letter reaffirming guidance in response to the proxy contest.  ¶ 55.  Pflueger also was on the QSI board in 2010 when a whistleblower raised the issue concerning payment of health and life insurance benefits to Razin and his wife

was made despite Razin no longer being a QSI employee after 2000 and a specific agreement preventing such payments. ¶ 72;

      **d.**    **Defendant Bristol**: A QSI director since 2008, the chairman of the QSI Audit Committee and a hand-selected member of the "special committee" formed by Razin in response to the proxy contest lead by former director Hussein. ¶¶ 15, 74, 80(e). Bristol signed the June 26, 2012 letter reaffirming guidance in response to the proxy contest. ¶ 55. Bristol was on the QSI board in 2010 when a whistleblower raised the issue concerning payment of health and life insurance benefits to Razin and his wife was made despite Razin no longer being a QSI employee after 2000 and a specific agreement preventing such payments. ¶ 72;

      **e.**    **Defendant Barbarosh**: A QSI director since 2009 and a member of several formal board committees including the audit committee and the "special committee." ¶¶ 14, 74, 80 (c). Barbarosh signed the June 26, 2012 letter reaffirming guidance in response to the proxy contest. ¶ 55. Barbarosh was on the QSI board in 2010 when a whistleblower raised the issue concerning payment of health and life insurance benefits to Razin and his wife was made despite Razin no longer being a QSI employee after 2000 and a specific agreement preventing such payments. ¶ 72;

      **f.**    **Defendant Rosenzweig**: A QSI director since 2012 and a

member of several formal board committees including the audit committee and the "special committee."  ¶¶ 22, 74, 80(c).  Rosenzweig signed the June 26, 2012 letter reaffirming guidance in response to the proxy contest.  ¶ 55;

        **g.**    **Defendant Malone** has served as a QSI director since 2013. ¶ 16;

        **h.**    **Defendant Neupert** has been a director of QSI since 2013 ¶ 17; and

        **i.**    **Defendant Panner** has been a QSI director since 2013. ¶ 18.

The Complaint specifically alleges that QSI's governance has long-been exposed to manipulation by Razin for his personal benefit. ¶¶ 70-74.  Despite being stripped of the title of CEO in 2000 and thereafter designating himself an "independent" director, Razin nonetheless maintained an office at QSI and acted as the *de facto* CEO.  ¶ 70.  By holding himself out as an "independent" director, Razin was able to manipulate independent committees (*e.g.* the Special Committee) to obtain personal benefit.  ¶ 72.   For example, not only did Razin claim health and life insurance benefits to which he was not entitled, he was able to get the QSI board to rubber-stamp payment of life insurance premiums even though his 2000 severance agreement specifically prevented such payments.  ¶ 73.

    **B.**   **<u>Defendants' Misleading Financial Guidance</u>**

Beginning on May 26, 2011, the Individual Defendants made misrepresentations regarding QSI's financial guidance (which was subsequently

disavowed after the truth publicly emerged). In May 2011 and again in July 2011, Plochocki confirmed that the Company was "in agreement" with the consensus view for revenue and earnings.   ¶ 43.   In November 2011, Plochocki disavowed any worries about flattening numbers and saturation calling such concerns "baseless." Plochocki stated, "there is nothing drying up and there is nothing slowing down."   ¶ 46.   Defendants repeatedly confirmed guidance throughout the Spring of 2012 at investor conferences, such as a JP Moran Global Heath Care Conference, in conference calls discussing quarterly results, and in SEC filings. ¶¶ 47-50.   In May 2012, Plochocki again stated that the Company was "very confident" that guidance would be met and that "[o]ur fundamentals haven't changed. Our pipeline keeps growing." ¶ 54.

On June 26, 2012, the Board took the unusual step of sending an open letter to all QSI shareholders stating that:

> We are also confident about our growth prospects.  For fiscal 2013, we expect that revenues will increase in the 20-24% range and we expect earnings per share to grow by 20-25%.

¶ 55.   This letter containing the false guidance was signed by Defendants Razin, Plochocki, Pflueger, Bristol, Barbarosh, and Rosenzweig (which individuals constituted a majority of the Board).   ¶¶ 55-56.

The letter-writing campaign, which was part of the proxy contest with former director Hussein, drew the attention of the SEC.  On July 3, 2012, the SEC directed that the Company make further disclosure about its statements that we expect that

revenues will increase in the 20-24% range and we expect earnings per share to grow by 20-25%.  ¶¶ 57-58.  QSI issued a revised statement which met with further SEC disapproval:

> The revised disclosure on page 5 of the proxy statement added in response to our comment is confusing because the specific projections we cited in our comment 15 do not appear there.  Comment 15 asked you to provide support and describe the assumptions underlying the very specific projected figures cited in the comment and included in your prior proxy materials; providing generic support and discussion without the projections themselves is confusing.  Please revise or advise.

¶ 60.

Despite direction by the SEC, the definitive proxy filings, filed July 13 and 23, 2012 (mirroring the unsupported guidance representations made by Razin, Plochocki, Pflueger, Bristol, Barbarosh, and Rosenzweig), falsely stated that the Company expected earnings to grow by 20-25%.  ¶ 61.

### C.   The Truth Emerges

In a surprise announcement to the investing public, Plochocki stated, during a July 26, 2012 earnings call, that QSI was *retracting* the earnings guidance that had been provided in May, June (including the June 26th letter signed by the Board), and July 2012.  This retraction, without explanation accounting for the deviation from the earnings guidance that QSI had re-affirmed as recently as thirteen days earlier, destroyed the credibility of the Company and resulted in a 36.3% drop in the QSI stock trading price and trigger multiple shareholder lawsuits. ¶ 63.

**D.**   **Defendants Knowingly Made  Inaccurate Financial Projections**

The majority of the Board (namely Razin, Plochocki, Pfluger, Bristol, Barbarosh, and Rosenzweig) actively reported guidance on June 26, 2012 which was publicly disavowed on July 26, 2012. ¶ 55, 63. The Complaint specifically alleges that QSI's financials were already experiencing a material decline at the time of the June 26th statement.  ¶ 56.   Even if these same six defendants neglected to take any measures to inform themselves about the veracity of such guidance prior to signing the open June 26, 2012 letter, these six defendants were on notice of inaccurate financial guidance from the issue being raised as part of the Hussein proxy fight and further from the receipt of the two letters from the SEC in July 2013.  ¶¶ 57-58, 60. Further, it was the specific charge of defendants Bristol, Barbarosh, and Rosenzweig as members of the Audit Committee to disclosures made by QSI's CEO (Plochocki) and CFO during the certification process about any significant deficiencies in the design or operation of internal controls or material weaknesses therein.  ¶ 33.  As a result, the Audit Committee members were or should have been aware of the inaccurate financial reporting.  ¶ 80(d).

**E.**   **Procedural History**

In October 2013, Ahmed Hussein, a former director of QSI, filed suit alleging fraud and breach of fiduciary duty in connection with July 2012 disclosures made by Plochocki, Razin and other members of QSI management.  *See* Exhibit A to the

Complaint (D.E. 1).  The *Hussein* Action was brought individually – not derivatively on behalf of QSI.  In September 2015, the complaint in the *Hussein* Action was dismissed on summary judgment after the Court narrowly found no individual reliance by Mr. Hussein on any misrepresentations.  *Hussein* Order on Motion for Summary Judgment (*Hussein* Order), dated October 7, 2015, at p. 6, annexed as Exhibit A hereto.  The court did not reach the issue of whether Defendants made misrepresentations or their state of mind in making misrepresentations.  *Id.*

Importantly, the *Hussein* Order expressly differentiated Mr. Hussein's individual claims from the shareholder derivative claims at bar.  While foreclosing the former, the Court expressly left the door open for the latter:

> "Plaintiffs who cannot plead with specificity to show a *bona fide* claim of actual reliance do not stand out from the mass of stockholders who rely on the market." [*Small v. Fritz Cos., Inc.* (2003) 30 Cal. 4th 167, 184] "[S]uch persons cannot bring individual or class actions from fraud or representation.  They may, however, be able to bring a corporate derivative action against the corporate officers and directors for harm done to the corporation.  Because a plaintiff in a derivative action is suing on behalf of the corporation, he or she need not show personal reliance. (*Id.* at 183-184).

*Hussein* Order, at p. 6.

On November 19, 2013, a putative class action complaint was brought against Razin, Plochicki, and Peter Holt alleging claims for violations of the federal securities laws. This action, which was not brought derivatively on the Company's behalf, was captioned: *In re Quality Systems, Inc. Sec. Litig.*, No. 8:13-cv-01818-

CJC-NPR. Following dismissal of the action, plaintiffs appealed to the Ninth Circuit. On July 28, 2017, the Ninth Circuit reversed in part permitting certain allegations concerning both forward-looking and non-forward-looking statements to remain actionable. Defendants' petition for rehearing *en banc* was denied without dissent. A writ of certiorari seeking review of the Ninth Circuit ruling is pending.

Plaintiff Foss filed this Action against the nine-member QSI Board on January 24, 2014 and, by agreement of the parties, the Action was stayed through the pendency of the Ninth Circuit appeal of the securities action.

A second derivative complaint filed by Kusumam Koshy was filed on September 28, 2017, more than three and a half years after the *Foss* complaint and after the Ninth Circuit reversed in part the order of dismissal of the securities action.[3] The composition of the QSI Board changed materially by the time that the *Koshy* action was filed and therefore demand futility was considered against a different QSI board than in the *Foss* action. *See Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) ("'[F]utility is gauged by the circumstances existing at the commencement of a derivative suit' and concerns the board of directors 'sitting at the time the complaint is filed.'").

---

[3]   *Koshy v. Barbarosh, et al.*, Case No. 17-cv-1694 CJC-JPR. Defendants have also sought dismissal of the *Koshy* action, albeit on different grounds, and argument on both motions to dismiss are scheduled for April 16, 2018.

On February 2, 2018, Defendants filed their Motion seeking to dismiss the *Foss* Complaint for failure to make a pre-suit demand. For the reasons stated herein, the Motion should be denied in its entirety.

## III. ARGUMENT

### A. Legal Standards Governing Demand Futility

Defendants move to dismiss the Complaint pursuant to Rule 23.1 of the Federal Rules of Civil Procedure ("Rule 23.1").[4] Rule 23.1 requires plaintiffs to allege with particularity "any effort by the plaintiff to obtain the desired action from the directors ... and the reasons for not obtaining the action or not making the effort." California law controls demand futility because QSI is a California corporation. *See Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 108-109 (1991); Cal. Corp. Code § 800(b)(2).

California courts have frequently looked to Delaware law for guidance on demand futility. *See, e.g., Oakland Raiders v. NFL*, 93 Cal. App. 4th 572, 586 n.5

---

[4]      The Motion seeks dismissal of the Complaint pursuant to Fed. R. Civ. P. 23.1, but does not articulate the "procedural vehicle" through which such relief is sought. *See In re PMC-Sierra, Inc. Derivative Litig.*, No. C 06-05330 RS, 2007 WL 2427980, at *2 (N.D. Cal. Aug. 22, 2007). "Accordingly, despite defendants' choice not to label it as such," the Motion should be "deemed as having been brought under [Fed. R. Civ. P. 12(b)(6)]." *Id.* In reviewing a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), "the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party." (citing *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 340 (9th Cir.1996)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(2001) ("law developed in the State of Delaware [pertaining to issues of demand futility] is identical to California corporate law for all practical purposes"); *Allergia, Inc. v. Boubolis*, 229 F. Supp. 3d 1150, 1156 n.3 (S.D. Cal. 2017) (same). Historically, demand futility is measured under either *Aronson v. Lewis*, 473 A.2d 805, 807 (Del. 1984), when the fiduciary breach is based on board action, or *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993), when the directors have taken no explicit action.

In the Ninth Circuit, the distinction between *Aronson* and *Rales* is unimportant where there are particularized allegations creating a "reasonable doubt as to whether a majority of the board of directors faces a substantial likelihood of personal liability for breaching the duty of loyalty." *Rosenbloom*, 765 F.3d at 1150; *see, also In re Intuitive Surgical S'holder Deriv. Litig.*, 146 F. Supp. 3d 1106, 1115 (N.D. Cal. Nov. 2015) (applying *Rosenbloom* and stating "it does not matter which test applies"). The Ninth Circuit further instructed that:

> The duty of loyalty, in turn, is violated "[w]here directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities [and] failing to discharge the non-exculpable duty of loyalty in good faith."

*Rosenbloom*, 765 F.3d at 1150 (citation omitted). *Rosenbloom* further instructs that "If a majority of the Board had actual or constructive knowledge of violations of law and did nothing, it violated its duty of loyalty and faces a substantial likelihood of

liability." *Id.* at 1151[5]; *In re Intuitive Surgical*, 146 F. Supp. 3d at 1119.

Under *Aronson*, the defendants' actions plainly are not protected because there are sufficient allegations demonstrating a lack of independence and business judgment. Allegations supporting derivative standing must include facts showing "a reasonable doubt" that "(1) the directors are disinterested or independent;" or "(2) the challenged transaction was otherwise the product of a valid exercise of business judgment." 473 A.2d at 814.[6] Foss alleges that the majority of directors were allied with Razin and actions the Board took to favor Razin (*e.g.*, awarding Razin and his wife health and life insurance even though he was no longer in the employ of QSI) demonstrated such a lack of independence. Similarly, because the majority of the QSI Board are alleged to have taken the affirmative action of disseminating false

---

[5]     On a motion to dismiss for demand futility, the complaint's allegations are evaluated in combination. *E.g.*, *Oswald v. Identiv, Inc.*, No. 16-cv-00241-CRB, 2017 WL 4877423, at *11 (N.D. Cal. Oct. 27, 2017). Even if no single allegation taken in isolation would be sufficient to raise a reasonable doubt regarding a director's independence, the totality of the plaintiff's allegations in combination may be sufficient to do so. *Int'l Equity Capital Growth Fund, L.P. v. Clegg*, C.A. No. 14995, 1997 Del. Ch. LEXIS 59, at *15 (Del. Ch. Apr. 21, 1997). "[I]n cases like this one an inference of Board involvement or knowledge may depend on a combination of factual allegations." *Rosenbloom*, 765 F. 3d at 1155 (citing *McCall v. Scott*, 239 F.3d 808, 823 (6th Cir. 2001); *In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 276 (S.D.N.Y. 2006).

[6]     A complaint raises a reasonable doubt that a director is disinterested in a demand if the director "is personally interested in the outcome of the litigation, in that the director will personally benefit or suffer as a result of the lawsuit." *In re infoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 985 (Del. Ch. 2007).

guidance, they are certainly interested participants in the outcome of the derivative suit. *See, e.g.*, *Pirelli Armstrong Tire Corp. Med. Benefits Trust v. Stumpf*, No. C11-2369 SI, 2012 U.S. Dist. LEXIS 16066, at **19-23 (N.D. Cal. 2011) (holding demand futility was sufficiently pleaded where plaintiff pleaded defendants' dissemination of misrepresentations in proxy statements).

Likewise, under *Aronson*, the specific act of issuing financial guidance (albeit in the midst of a proxy fight), which guidance was disavowed one month later does not constitute proper business judgment. Either defendants knew the guidance was incorrect[7] and they shouldn't have sent a letter to shareholders affirming the numbers or defendants failed to exercise proper business judgment by not being properly informed before making the statements. In both instances, business judgment was flawed and there is a reasonable basis on which to find the defendants face liability and why pre-suit demand would have been futile.

**B.** **The Complaint Alleges With Particularity Facts That Create A Reasonable Doubt That The Majority Of The QSI Board Could Disinterestedly Consider A Demand**

    **1.** **The Complaint Sufficiently Alleges That The Board Members Face A Substantial Likelihood Of Personal Liability For Breaching The Fiduciary Duty Of Loyalty**

        **a.** **The Majority Of Directors Signed The June 26, 2012 Letter**

The Complaint alleges that directors Razin, Plochocki, Pflueger, Barbarosh,

---

    [7] It is alleged that Plochocki says he approved the guidance that was made because Razin wanted to make even higher guidance projections. ¶¶ 5, 7.

and Rosen (five of the nine sitting directors) affirmatively made baseless misrepresentations about QSI's financial guidance in a June 26, 2012 letter sent to all QSI shareholders. ¶ 55. There was no doubt pressure on these defendants to tout the future prospects of QSI as Mr. Hussein was waging a proxy contest. Nonetheless, no matter what motivations, defendants do not have license to shirk their fiduciary duties of loyalty. These five board members stated: "For fiscal 2013, we expect that revenues will increase in the 20-24% range and we expect earnings per share to grow by 20-25%." *Id*. This guidance was the subject to critical comment by the SEC and was disavowed less than one month after the statements were made. ¶¶ 57, 59, 63. This is the first of several grounds for Plaintiff Foss' allegations that the majority of the board acted in such a way as to expose themselves to the substantial likelihood of personal liability.

**b.**    <u>The Majority Of Directors Voted To End The Investigation Into Razin's Continued Payments of Medical and Life Insurance</u>

In May 2010, Joseph Davis, a former QSI director alerted the QSI Board (including defendants Razin, Plochocki, Barbarosh, Bristol, and Pflueger) that Razin had falsely certified he was full-time company employee when in fact he had not been employed by QSI since 2003. ¶ 72. Razin did so in order to falsely obtain health insurance for himself and his wife. Although Davis proposed an independent investigation, it was voted down by the sitting directors. *Id*. Additionally, in 2010,

the QSI Board (including the majority of the named defendants) approved the payment of life insurance benefits for Razin and his wife even though it was in direct contravention to a 2000 severance agreement limiting life insurance to a three year period (2003). ¶ 73. As the majority of board members were part of the process and took steps to line the pockets of Razin, these same directors face substantial likelihood of personal liability.

### c.   The Majority Of Directors Were Appointed By Razin To Sit On a Special Committee And Act Without Full Board Authorization

In the midst of a proxy fight with former director Hussein, it is alleged that Razin created a new special committee of the QSI Board and ceded power to the committee to "act on our Board's behalf in connection with the solicitation and voting of proxies at the annual meeting, except where the Proxy Voting Committee has been authorized to act, as well as all matters related to any litigation or threat of litigation associated with such meeting and its related activities."  ¶ 74. This empowered members of the Special committee to take action and make representations on the full QSI Board's behalf.  The Special Committee consisted of "Messrs. Razin, Barbarosh, Bristol, Pflueger, and Rosenweig," who comprised the majority of the QSI Board.  *Id*.  If is further alleged that Razin formed the Special Committee only with directors who were closely aligned and chosen by him.  ¶ 75. As a result these Board members were not independent from Razin and were

responsible for statements made in connection with the solicitation of proxies.

### d.   Razin Was Responsible For Many of The Alleged Wrongful Acts

Defendants make an attempt to argue that Razin cannot be considered interested for purposes of measuring demand simply because he was the largest shareholder of QSI.[8]  This is far from the only fact upon which Plaintiff asserts that Razin is an interested party.  The complaint alleges far more: Razin was the founder of the company (¶ 21); selected the directors (¶¶ 69, 75); continued to act as an employee even after employment was terminated (¶ 72); received benefits from continued health and life insurance payments (¶¶ 72-73); knew that publicly-reported guidance was false (¶¶ 7,  56); and made misrepresentations about QSI's guidance (¶ 55).  It strains credulity to consider Razin as being independent for purposes of measuring demand when there are multiple allegations that demonstrate the substantial likelihood of his personal liability.

### e.   Plochocki Made Many Misrepresentations And Profited From Doing So

Plaintiff sufficiently allege that Plochocki is likely to be personally liable for a breach of fiduciary duty as a fact that many of the misrepresentations were made

---

[8]   Defendants make the confused point that most of the directors do not bear substantial likelihood of personal liability under Count VI: Unjust Enrichment. Plaintiffs don't disagree and, indeed, that is why Count VI is only brought against Razin.  The liability of Razin may be found in Count VI, but for the majority of other directors, it is under the prior counts for breach of fiduciary duty.

directly by Plochocki speaking to analysts, interviews given to *Investors Daily* or the June 26th open letter to QSI shareholders. ¶¶ 44-50, 53-55. The fact that he is specifically charged with making the statements is ample for purposes of demonstrating interest.  Added to that is the allegation that Plochocki was CEO since 2008 and therefore was privy to internal company documents which informed him about the adverse non-public information. (¶¶ 20, 80(d)).  Compounding the problem for Plochocki was the fact that he sold a great number of shares of QSI stock at the same time the misrepresentations were being made.  (¶ 108).

Plochocki is also dependent on his fellow directors to maintain his position. *See, e.g., In re Student Loan Corp. Deriv. Litig.,* 2002 Del. Ch. LEXIS 7, at *9 (Del. Ch. Jan. 8, 2002) ("I find it improbable that a reasonable person in the position [employee-directors] occupy would not ponder the effect affirmative action on a demand would have on her future."); *Mizel v. Connelly*, 1999 Del. Ch. LEXIS 157, at **8-10 (Del. Ch. July 22, 1999); *see also Rales*, 634 A.2d at 937 ("there is a reasonable doubt that [an employee-director] can be expected to act independently considering his substantial financial stake in maintaining his current offices"); *In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919 A.2d 563, 584 (Del. Ch. 2007) (director's service as CEO was sufficient to create a reasonable doubt as to his independence).  Accordingly, there has been a substantial showing that Plochocki faces personal liability on the fiduciary claims set forth in the Complaint.

Accordingly, demand is excused as to Plochocki.

> **f.**   **The Audit Committee (Bristol, Barbarosh, Pflueger, And Rosenweig) Were Responsible For The Disclosure Of The Failed Guidance**

The members of QSI Audit Committee, including Bristol, Barbarosh, Pflueger, and Rosenweig, either approved the falsified guidance or knew of it and consciously declined to take action.  "'A claim that an audit committee or board had notice of serious misconduct and simply failed to investigate, for example, would survive a motion to dismiss, even if the committee or board was well constituted and was otherwise functioning.'"  *Rosenbloom*, 765 F.3d at 1154 (quaoting *David B. Shaev Profit Sharing Account v. Armstrong*, 2006 Del. Ch. LEXIS 33, at *15 (Del. Ch. Feb. 13, 2006)).  In addition to the general fiduciary obligations owed to QSI, the Audit Committee members' conduct was guided specifically by the Audit Committee's charter.  The charter specifically tasked Audit Committee members to:

> - Review and discuss with management and the independent auditor the annual audited financial statements, including disclosures made in management's discussion and analysis….
>
> - Review and discuss with management and the independent auditor the Company's quarterly financial statements prior to the filing of its Form 10-Q . . . .
>
> - Review disclosures made to the Audit Committee by the Company's CEO and CFO during their certification process for the Form 10-K and Form 10-Q about any significant deficiencies in the design or operation of internal controls or material weaknesses therein and any fraud involving

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

management or other employees who have a significant role
in the Company's internal controls.

¶ 33.   With this heightened review mandated by the Audit Committee Charter and the fact that the same directors who sat on the Audit Committee also disseminated incorrect guidance, there is a substantial likelihood that the Audit Committee Directors (Bristol, Barbarosh, Pflueger, and Rosenzweig) will face personal liability for their conduct.[9]

The Audit Committee if they were not aware of the false guidance, certainly was placed on notice after the SEC specifically challenged the same representations made by the Audit Committee members in the June 26, 2012 letters.  ¶¶ 55, 57, 59. *See In re Veeco Instruments*, 434 F. Supp. 2d at 276 (demand not required on audit committee members because each faced substantial likelihood of liability due to allegations that they failed to perform duties imposed on them by the charter); *In re Brocade Comm. Sys. Deriv. Litig.*, 615 F. Supp. 2d 1018, 1048 (N.D. Cal. 2009) (finding sufficient red flags to put defendants on notice that the board's compensation committee was exercising little to no supervision over officers taking independent actions).   Either these Individual Defendants did as the Audit

---

[9]      Defendants are correct that mere service on a board committee does not alone conclusively establish liability.  Def. Br. at 17.  However, the allegations here are more detailed because it is specifically alleged that the Audit Committee made the misrepresentations through its members signing the June 26, 2012 letter.

Committee charter required and so knew of the illegal conduct or they did not and breached their fiduciary duties by failing to review significant regulatory matters as the charter required.

### 2. Hussein And SEC Warning Letters Placed Defendants On Notice Of Wrongdoing

Defendants incorrectly attempt to pigeon-hole this case into one theory of liability for failure to monitor under *Caremark*. *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996) (A *Caremark* claim is generally one where defendants are alleged to have failed in maintaining internal controls even where there have been "red-flags" putting defendants on notice of problems.). Setting aside that *Foss* asserts that the majority of the QSI Board actively participated in the wrongdoing, the specific count asserting that defendants failed to properly oversee and manage QSI (Count III) is well-pled because *Foss* sets forth the warning signs given to the directors of the need to take action. *See, e.g.*, *In re Brocade Comm. Sys.*, *supra* (finding sufficient red flags to put defendants on notice that the board's compensation committee was exercising little to no supervision over officers taking independent actions); *In re Veeco Instrument*, 434 F. Supp. 2d at 277-78 (directors recklessly ignored red flags because, after violations of federal export laws were brought to the company's attention, there was a second set of violations seven months later); *McCall*, 239 F.3d at 820 (finding *Caremark* liability "in the face of audit information, ongoing acquisition practices, allegations brought against [the

company] in a *qui tam* action, the extensive federal investigation, [and] the *New York Times'* investigation into [the company's] billing practices"); *Wiley v. Stipes*, 595 F. Supp. 2d 179, 186-87 (D.P.R. 2009) (applying *Stone/Caremark* standard where board members were aware of or should have been aware of the dangers of loaning more money to another entity but nonetheless failed to stop the loans or correct financial statements that did not show the entity's loans were impaired, and concluding that the directors "consciously demonstrate[d] a disregard for their responsibilities," violating their duty of loyalty).

*Foss* specifically alleges that the QSI Board in 2012 (which constitutes the majority of the directors named as Defendants in this Action) was placed on notice of the failed oversight of financial reporting in two ways: the fact that the Hussein proxy battle called out the issue and the fact that the SEC sent QSI two letters questioning the support for the financial guidance.  ¶¶ 7, 57-60.  Hussein asserted that there were repeated corporate governance failures and that after QSI retracted its guidance, the Board refused to investigate the discrepancy between the Company's prior projections and its retracted guidance. ¶ 7.  It is indefensible to suggest that the Individual Defendants were so supine as to not be aware of the corporate governance failures when Hussein, a fellow board member, challenged the misleading guidance. Likewise, after the majority of the QSI Board made the guidance misrepresentation in June 2012, the SEC sent two letters questioning the very same guidance:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> For example, we note the following statement: For fiscal 2013, we expect that revenues will increase in the 20-24% range and we expect earnings per share to grow by 20-25%.  Please provide support for these very specific projected figures by describing the assumptions underlying them, including any limitations on those assumptions or other factors that may cause them not to be realized.

¶ 57.   The issue with unsupported projections was raised again in a second letter from the SEC.  ¶¶ 59-69.  The majority of the named Defendants who sat on the QSI Board in 2012 simply ignored the red flags thrown by the SEC.

## C.   QSI's Exculpatory Charter Provision Does Not Aid The Defendants

Defendants contend the exculpatory provision in QSI's certificate of incorporation precludes Plaintiff's claims.  Defs.' Br. at 8.  Defendants are in error.  Cal. Corp. Code § 204(a)(10) provides express limitations on the ability of a corporation to exculpate the directors and officers.  Further, courts have made clear that "a corporation may not discharge a director from liability for, among others, intentional misconduct, knowing violations of law, bad-faith actions, or receipt of improper personal benefits." *Gordon v. Bindra*, 2014 U.S. Dist. LEXIS 77620, at *14 (C.D. Cal. June 5, 2014) (citing Cal. Corp. Code § 204(a)(10)).  Indeed, Cal. Corp. Code § 204(a)(10) does not shield the directors from liability where, as here, Plaintiff has provided particularized allegations demonstrating, *inter alia*, that the entire Board was aware of, and complicit in, the Company's artificial financial guidance.  *Desaigoudar v. Meyercord*, 108 Cal. App. 4th 173, 184 (Cal. App. 6th

Dist. 2003) (Cal. Corp. Code § 204(a)(10)(iii) provides that the board cannot avail itself of the protection of the business judgement rule if a majority of the board has a personal interest in the outcome). The wrongdoing alleged here clearly constitutes "intentional misconduct, knowing violations of law, [and/or] bad faith actions" that strip the Board of the protections of Cal. Corp. Code § 204(a)(10). *See Gordon*, 2014 U.S. Dist. LEXIS 77620, at *14; *accord* Defs.' Br. at 13 (conceding that exculpatory charter provision does not protect directors who acted knowingly, intentionally, or in bad faith). Accordingly, the exculpatory provision in the Company's certificate of incorporation does not aid Defendants.

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that Defendants' motion to dismiss be denied in its entirety.[10]

---

[10]   Plaintiff Foss respectfully submits his initial complaint sufficiently sets forth allegations showing why pre-suit demand is futile, principally because the majority of board members face a substantial likelihood of personal liability based upon their conduct. Nonetheless, should the Court be inclined to grant Defendants' motion, Plaintiff requests the opportunity to amend in order to clarify any point of concern held by the Court. Plaintiff has not previously amended the complaint and leave to amend should be liberally granted provided there is no undue prejudice to the opposing party. Fed. R. Civ. P. 15(a)(2); *Endurance Med., Inc. v. Smith & Nephew, Inc.*, 2016 WL 8856660, at *1 (C.D. Cal. Sept. 27, 2016) ("The policy favoring amendment is to be applied with 'extreme liberality.'").

1   Dated:  March 2, 2018                              Respectfully submitted,

2
                                                       **GLANCY PRONGAY**
3                                                        **& MURRAY, LLP**

4
                                                       By:  */s/ Kara M. Wolke*
5                                                      Lionel Z. Glancy
                                                       Kara M. Wolke
6                                                      1925 Century Park East, Suite 2150
7                                                      Los Angeles, CA 90067
                                                       Telephone: (310) 201-9150
8                                                      Facsimile: (310) 201-9160
9                                                      Email:  info@glancylaw.com

10
11                                                     **THE WAGNER FIRM**
                                                       Avi Wagner (Cal. SBN #226688)
12                                                     1925 Century Park East, Suite 2100
13                                                     Los Angeles, CA 90067
                                                       Telephone:   (310) 491-7949
14                                                     Facsimile:    (310) 694-3967
15                                                     Email: avi@thewagnerfirm.com

16
17                                                     **HARWOOD FEFFER LLP**
                                                       Robert I. Harwood
18                                                     Matthew H. Houston
                                                       Benjamin I. Sachs-Michaels
19                                                     488 Madison Avenue
20                                                     New York, NY 10022
                                                       Telephone: (212) 935-7400
21
22                                                     *Counsel for Plaintiff*

23
24
25
26
27
28

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On March 2, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 2, 2018, at Los Angeles, California.

*s/ Kara M. Wolke*
Kara M. Wolke

# Mailing Information for a Case 8:14-cv-00110-CJC-JPR Timothy J. Foss v. Craig A. Barbarosh et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com

- **Andrew Gray**
  andrew.gray@lw.com,andrew-gray-3541@ecf.pacerpro.com,#ocecf@lw.com,khadijah-fields-2405@ecf.pacerpro.com,jana.roach@lw.com

- **Michele D Johnson**
  michele.johnson@lw.com,michele-johnson-7426@ecf.pacerpro.com,#ocecf@lw.com,khadijah-fields-2405@ecf.pacerpro.com,jana.roach@lw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,CLinehan@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Avi N Wagner**
  avi@thewagnerfirm.com,anwagneresq@hotmail.com

- **Peter Allen Wald**
  peter.wald@lw.com,peter-wald-7073@ecf.pacerpro.com,#sflitigationservices@lw.com

- **Kara M Wolke**
  kwolke@glancylaw.com,info@glancylaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)