# EXHIBIT A

ELECTRONICALLY RECEIVED
Superior Court of California,
County of Orange
10/01/2015 at 02:31:39 PM
Clerk of the Superior Court
By eClerk, Deputy Clerk

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

OCT 07 2015

ALAN CARLSON, Clerk of the Court

A. Bovard

BY:  A. BOVARD    DEPUTY

1  LATHAM & WATKINS LLP
     Peter A. Wald (Bar No. 85705)
2    Michele D. Johnson (Bar No. 198298)
     Colleen C. Smith (Bar No. 231216)
3    Andrew R. Gray (Bar No. 254594)
   650 Town Center Drive, 20th Floor
4  Costa Mesa, California 92626-1925
   Telephone: +1.714.540.1235
5  Facsimile: +1.714.755.8290
   E-mail:  peter.wald@lw.com
6          michele.johnson@lw.com
           colleen.smith@lw.com
7          andrew.gray@lw.com

8  Attorneys for Defendants Sheldon Razin,
   Steven Plochocki, and Quality Systems, Inc.

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                    FOR THE COUNTY OF ORANGE

11

12  AHMED D. HUSSEIN,                          Case No. 30-2013-00679600-CU-NP-CJC

                  Plaintiff,                   [PROPOSED] ORDER GRANTING
13                                             DEFENDANTS' MOTION FOR
                                               SUMMARY JUDGMENT
14  SHELDON RAZIN, STEVEN PLOCHOCKI,
    QUALITY SYSTEMS, INC. and DOES 1-10,
15  Inclusive                                  Assigned For All Purposes To:
                                               Judge Mary Schulte
16                Defendants.                  Dept.:        C-06

17                                             Hearing Date: September 10, 2015
                                               Time:         1:30 p.m.
18                                             Dept.:        C-06
                                               Judge:        Judge Mary Schulte
19                                             Reservation:  72189058

20                                             Action Filed: October 4, 2013
                                               Trial Date:   October 13, 2015
21

22

23

24

25

26

27

28

                                    1

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    Defendants Sheldon Razin ("Razin"), Steven Plochocki ("Plochocki"), and Quality
2    Systems, Inc., a publicly traded corporation ("QSI," or the "Company," and collectively with
3    Razin and Plochocki, "Defendants"), move for summary judgment on the basis that Plaintiff
4    Ahmed Hussein ("Plaintiff" or "Hussein") cannot prove two essential elements of his fraud
5    claims; i.e., justifiable reliance and damages.  Plaintiff's first cause of action is for Fraud and
6    Deceit, the second is for Constructive Fraud, and the third is for Negligent Misrepresentation.
7    Defendants assert that "the undisputed evidence shows that Hussein did not actually or
8    justifiably rely upon Defendants' statements, and that Hussein is unable to prove cognizable
9    damages."  Defendants argue that Plaintiff's constructive fraud claim also fails because he has
10   not established the requisite breach of fiduciary duty.

11       The Court, having fully considered the arguments of all parties, both written and oral, as
12   well as the evidence presented, now rules as follows:  The Motion for Summary Judgment is
13   **GRANTED**.  As a matter of law, Plaintiff cannot prove he reasonably relied on Defendants'
14   alleged misrepresentations in making his decision to hold his shares.

15       **A.    Issues Framed By The Pleadings**

16       Plaintiff is one of QSI's largest shareholders and was a member of QSI's board of
17   directors until May 2013.  Defendant Plochocki was QSI's CEO for all time periods relevant to
18   this action.  Defendant Razin founded QSI, is the Company's largest shareholder, and is the non-
19   executive chairman of the board.

20       Plaintiff alleges that he intended to sell his QSI shares, but decided instead to hold them
21   in reliance on false misrepresentations about the Company's performance made by Defendants.
22   This is commonly referred to as a "holder's action."  Plaintiff alleges he suffered millions of
23   dollars in losses in July 2012 when QSI's stock plummeted after QSI retracted its prior
24   projections of 20-25% revenue and earnings growth for fiscal year 2013.  Plaintiff alleges that
25   QSI's stock plummeted by more than 35% in a single day causing him, so he claims, to suffer
26   more than $80 million in losses on that day alone.

27       **1.    Alleged Misrepresentations**

28       Plaintiff alleges Defendants made the following false representations:

1

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
ORANGE COUNTY

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1)  <u>November 7, 2011</u>:  Plochocki tells *Investor's Business Daily* that "worries about flattening and saturation" in the healthcare software market "were baseless," and "there is nothing drying up and there is nothing slowing down";

2)  <u>January 25, 2012</u>:  Plochocki tells the board of directors (including Plaintiff) that QSI's growth was "rivaled only by Apple" and that the Company expected to achieve 30% revenue and net income growth during its 2013 fiscal year, which began on April 1, 2012;

3)  <u>January 26, 2012</u>:  Plochocki, on a public earnings conference call (which Plaintiff listened to), states that the QSI sales "pipeline" "continues to build to record levels;

4)  <u>May 17, 2012</u>:  Plochocki stated on an earnings call in connection with the release of QSI's fourth quarter and year-end results for the 2012 fiscal year that "we remain confident about the growth opportunities, as evidenced by our recent guidance for the 2013 fiscal year.  We have stated that we expect revenues to increase 20 to 24%, and earnings per share to grow 20 to 25%."  Paul Holt, QSI's CFO, made similar statements on this call about the expected growth and QSI's confidence in the growth;

5)  <u>June 26, 2012</u>:  Similar financial expectations were stated in proxy materials filed with the SEC, signed by Razin, Plochocki and five QSI directors; and

6)  <u>July 13, 2012</u>:  In a definitive proxy statement filed with the SEC, QSI stated that "for fiscal year 2013, we expect that revenues will increase in the 20-24% range and we expect earnings per share to grow by 20-25%."

Plaintiff alleges that contrary to these statements, QSI's revenues and net income were in fact decreasing, not increasing, and the growth projections were baseless.  Plaintiff claims that QSI engages in a continuous reforecasting process based on real-time information regarding QSI's revenue and income, so it must have known the true facts regarding QSI's business performance when it made the statements.

**2.    Allegations Of Reliance**

Plaintiff alleges that he served on the QSI board of directors, but was not privy to real-

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    time financial information and had to rely on the accuracy of the Company's public statements

2    and the information provided to the board.  Plaintiff alleges he was "completely surprised" by the

3    retraction of the projections in July 2012 and had no idea the projections had no factual basis.

4          Plaintiff alleges that he considered selling his QSI stock, and discussed a sale of his stock

5    with multiple potential trading partners, including Moe Cohen, Managing Director and head of

6    investment banking at Jones Trading, Devin Hill, managing director at JP Morgan, and David

7    Horowitz, Director at Credit Suisse, in late 2011 and early 2012.  Plaintiff alleges that he

8    disclosed the possibility of selling "some or all of his shares" in a November 10, 2011 13D filing

9    with the SEC.  Plaintiff claims that he decided to retain the stock after listening to Plochocki

10   state on January 25, 2012, that QSI's growth was "rivaled only by Apple" and that the Company

11   "expected to achieve 30% revenue and net income growth during its 2013 fiscal year, which

12   began on April 1, 2012," and on January 26, that the QSI pipeline "continues to build to record

13   levels."  Plaintiff alleges that, had Plochocki not made those false representations, he would have

14   sold his stock before March 2012.

15          **B.    Defendants' Motion**

16                **1.    Statements Of Undisputed Facts ("UF")**

17          Defendants' Motion for Summary Judgment (the "Motion") was accompanied by a

18   Separate Statement of Undisputed Facts ("SSUF"), which listed the same 129 "Undisputed

19   Facts" in support of the motion for each of Plaintiff's causes of action.

20          In response to Defendants' SSUF, Plaintiff either indicates "undisputed", or "undisputed

21   and immaterial" as to the following Facts: 1-5, 7, 9-11, 13-20, 22-23, 28-36, 38-44, 58-62, 63,

22   65, 66, 69-74, 78, 81, 84-91, 96, 98, 100-102, 104, 107, 110-112, 118, 119, 121, 123-125, 127-

23   128.  His other responses, purportedly raising disputed material facts, in fact do not do that.

24   Rather, many of the responses lack evidentiary support, are argumentative in nature, or, simply

25   refer to objections which have been overruled (discussed below).

26          Plaintiff also submitted 59 additional "disputed material facts," which are addressed in

27   Defendants' Response to Plaintiff's Additional Disputed Material Facts.  As Defendants pointed

28   out, a large number of these Additional Disputed Material Facts are immaterial to the Motion.

3

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1   Others are not supported by the evidence cited. Still others are misleading or incomplete.

2   Finally, according to Defendants' Response, Plaintiff's facts H5, H6, H7, and H59 support the

3   grant of summary judgment. Even after overruling most of Defendants' evidentiary objections

4   (discussed below), the "disputed material facts" do not withstand scrutiny.

5        2.   **Defendants' Arguments In Support Of Their Motion**

6        With respect to reliance, Defendants argue that in discovery, Plaintiff has failed to adduce

7   any evidence sufficient to establish a "holder's claim" under *Small v. Fritz Companies, Inc.*

8   (2003) 30 Cal. 4th 167. Defendants make the following arguments:

9   • Plaintiff admits that he had not decided to sell his shares as of his November 10,

10      2011 Schedule 13D filing. UF ¶ 57. Indeed, Plaintiff's own expert assumed that

11      a potential first sale would not have occurred until at least January 26, 2012—

12      thereby abandoning the claim that he would have sold in late 2011. Ex. 94, at

13      940-42, 945-50.

14   • Plaintiff has offered no evidence of specific offers to purchase his QSI shares and

15      no evidence regarding the number of shares he would have sold, at what price, to

16      whom or on what date. UF ¶¶ 93-111. Every one of his four financial advisors

17      flatly denies ever having made an offer to purchase Plaintiff's shares, or ever

18      negotiating the quantity, timing, or price of a potential sale with any counterparty.

19   • The undisputed evidence reveals that Plaintiff took action to maintain, and even

20      increase, the number of QSI shares he owned during the period at issue. He

21      purchased additional shares on November 10, 2011 (UF ¶ 69), and forced his

22      broker to unwind a margin sale of his shares in May 2012 (UF ¶¶ 81-83).

23   • Plaintiff's claim that he reevaluated his decision to sell based on the challenged

24      statements is not corroborated by anything beyond the conclusory allegations set

25      forth in his pleadings. Plaintiff told his financial advisors that he was not

26      interested in selling his shares (UF ¶¶ 25-27, 103, 106, 111, 122) because of his

27      desire to launch yet another proxy contest for control of the Board. Plaintiff's

28      unyielding and ironclad insistence that his margined QSI shares NOT be sold was

4

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    entirely driven by his plan to take over the Board, and had nothing whatsoever to

2    do with an alleged "reliance" on financial projections that he publicly denounced.

3    • Hussein repeatedly challenged the accuracy and truthfulness of QSI's

4      statements—contradicting any assertion that he relied, actually, or reasonably, on

5      the statements at issue. UF ¶¶ 40, 42-43, 45-55, 88-91.  Indeed, Hussein voted

6      against the very budget on which he now claims to have "relied" in deciding not

7      to sell. UF ¶¶ 58-63, 129.

8         **3.    Plaintiff's Evidence In Opposition To Defendants' Motion**

9    In opposition to the Motion, Plaintiff submits the following evidence:

10   • Expert Declaration of Mark Zmijewski:  The declaration is pertinent to damages

11     only.

12   • Hussein Declaration:  Self-serving declaration regarding his detrimental reliance.

13   • Caforio Declaration:  Counsel's declaration attaching and authenticating

14     evidence.

15   **C.    <u>Motion For Summary Judgment Standard</u>**

16   A defendant moving for summary judgment bears an initial burden of producing

17   admissible evidence sufficient to show that the plaintiff's action has no merit; i.e. that, as to each

18   cause of action, one or more elements of the cause of action cannot be established, or there is a

19   complete defense.  (Code Civ. Proc., § 437c(p)(2).)  A moving defendant may point to the

20   absence of evidence to support the plaintiff's case. (*Andrews v. Foster Wheeler LLC* (2006) 138

21   Cal. App. 4th 96, 101.)  Specifically, a defendant may meet its initial burden of production by

22   showing, through factually devoid discovery responses, that plaintiff lacks evidence to establish

23   a necessary element of a cause of action.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal. 4th

24   826, 854, fn. 22.)  Only after a defendant meets that burden, does the burden shift to the plaintiff

25   to produce admissible evidence showing the existence of a triable issue as to a cause of action or

26   complete defense.

27

28

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

**D.    The Undisputed Evidence Shows Plaintiff Did Not Reasonably Rely On Defendant's Alleged Misrepresentations**

A shareholder like Plaintiff who alleges he decided to hold and not sell his shares in reliance on false representations about the company's financial performance can bring a claim for fraud under California state law. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal. 4th 167.) However, in order to avoid speculative claims by shareholders who merely contend they "thought about" selling and then changed their minds, a plaintiff bringing a holder's claim must make *a bona fide showing* of actual reliance on the representations. (*Id.* at 183-185.) "In a holder's action a plaintiff must allege specific reliance on the defendants' representations: for example, that if the plaintiff had read a truthful account of the corporation's financial status the plaintiff would have sold the stock, how many shares the plaintiff would have sold, and when the sale would have taken place. The plaintiff *must allege [and presumably prove at trial] actions, as distinguished from unspoken and unrecorded thoughts and decisions*, that would indicate that the plaintiff actually relied on the misrepresentations." (*Id.* at 184 [Emphasis added].) "Plaintiffs who cannot plead with sufficient specificity to show a bona fide claim of actual reliance do not stand out from the mass of stockholders who rely on the market." (*Id.*) "[S]uch persons cannot bring individual or class actions for fraud or misrepresentation. They may, however, be able to bring a corporate derivative action against the corporate officers and directors for harm done to the corporation. [Citation.] Because a plaintiff in a derivative action is suing on behalf of the corporation, he or she need not show personal reliance." (*Id.* at pp. 184–185.)

Here, contrary to Defendant's contentions, the evidence does show more than just "unspoken" or "unrecorded" thoughts on Plaintiff's part that he was considering selling his shares during the 2011/2012 time frame. The evidence shows that Plaintiff had actual discussions with advisors and brokers about the possibility of selling his shares during this time frame. For example, Mr. Cohen testified that Plaintiff specifically told him in 2011 or 2012 that he was considering selling his QSI shares, and that Plaintiff told Cohen he had reevaluated his decision to sell. (Cohen Depo. 38:14-17, 72:23-73:3; *see also* Mirsky Depo. 921:21-922:8

6

1  [Plaintiff raised general idea of selling his shares].)  Defendants argue that because Plaintiff had

2  not discussed with his brokers the specific price, timing, or quantity of any sale, never authorized

3  them to begin negotiating a sale on his behalf, and no offer to purchase his shares was ever made,

4  Plaintiff cannot prove actual reliance.  However, the *Small* decision does not stand for the

5  proposition that a plaintiff cannot bring a holder's claim unless he or she can prove that an actual

6  sale was in the process of being effectuated, and was then canceled.

7  While Plaintiff does have some evidence to show he was considering selling his shares

8  during the relevant time period, the undisputed evidence shows that Plaintiff did not reasonably

9  (i.e., justifiably) rely on Defendants' alleged false projections and misrepresentations in deciding

10  to hold his shares.

11  To establish his claim for fraud, Plaintiff must prove he ***reasonably relied*** on Defendants'

12  alleged false representations.  (CACI No.1900; citing Civil Code §§ 1709 & 1710; *Manderville*

13  *v. PCG & S Group, Inc.* (2007) 146 Cal. App. 4th 1486, 1498.)  "'Reliance exists when the

14  misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which

15  altered his or her legal relations, and when without such misrepresentation or nondisclosure he or

16  she would not, in all reasonable probability, have entered into the contract or other transaction.

17  [Citations.]  Except in the rare case where the undisputed facts leave no room for a reasonable

18  difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of

19  fact. [Citations.]  However, ***whether a party's reliance was justified may be decided as a matter***

20  ***of law if reasonable minds can come to only one conclusion based on the facts***.'"  (*Id.*, citing

21  *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal. 4th 1226, 1239 [Emphasis added].)

22  Here, Defendants met their initial burden on summary judgment of showing that Plaintiff

23  cannot prove the element of reasonable reliance.  The undisputed evidence shows that, at the

24  time he allegedly relied on Defendants' statements and financial projections, Plaintiff had

25  "extensive concerns" regarding the company and extreme distrust of defendants, and had

26  claimed to have been excluded from QSI's financial documents and decision making since 2008.

27  (*See* Ex. 30 [November 2011 Schedule 13D]; Hussein Dec., Para. 5, 7, 8.)

28  Plaintiff was a sophisticated investor (Ex. 3 [Hussein Depo. 21:13-23]), the second

1   largest shareholder of QSI and was represented by counsel in connection with his SEC filings.

2   In determining whether one can reasonably or justifiably rely on an alleged misrepresentation,

3   the knowledge, education and experience of the person claiming reliance must be considered.

4   (*Hasso v. Hapke* (2014) 227 Cal. App. 4th 107, 132.)  In November 2011, just prior to the time

5   Plaintiff claims he held his stock in reliance on defendants' false representations, Plaintiff filed a

6   Schedule 13D stating as follows:

7   Mr. Hussein continues to be deeply troubled by the deterioration in
    corporate governance at the Issuer. . . . ¶ Dictatorship leads to

8   disastrous results. . . .¶ The Issuer's board membership is
    dominated by Mr. Razin's close associates. . . . Mr. Hussein, as

9   well as his attorney on his behalf, has written on numerous
    occasions to comment on the board's actions as well as to request

10  additional information. The responses Mr. Hussein has received
    were either unsatisfactory or non-existent. Mr. Hussein disclaims

11  responsibility for the board's actions because he denied any
    meaningful input, including participation on any of the board

12  committees.

13       Plaintiff goes on to state that:  "Mr. Hussein is enthusiastic about the promise of [QSI's]

14  proprietary software. . ." but is "concerned" that QSI's "financial results are adversely affected

15  by the board's failure to perform its main function of exercising meaningful supervision over the

16  development by senior management of a proposed strategic direction and resulting business plan

17  for [QSI], *evaluating the reasonableness of the assumptions underlying the budget,* and taking

18  steps to hold senior management accountable for achievement of the business plan and budget."

19  (Emphasis added.)  Further, Plaintiff states he is "also concerned about the accuracy of public

20  disclosures made by the company" and that he "considered resigning from the board, but at

21  present he continues to believe that such action would be an abdication of his commitment to the

22  shareholders who have voted for him and would adversely affect his ability to safeguard the

23  significant personal investment he has made in the Issuer."  Plaintiff further testified he asked for

24  backup information in connection with the company's projections, but did not receive it to his

25  knowledge.  (Ex. 3 [Hussein Depo. 290:7-291:1].)

26       Plaintiff attended the May 24, 2012 board meeting and voted against the 2013 proposed

27  fiscal year quarterly budget because he "didn't have enough information. . . to base [his]

28  judgment whether this budget [was] rosy, too conservative."  He felt the board "didn't have

8

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1  enough discussion." (Ex. 3 [Hussein Depo. 294:11-24].)  This 2013 fiscal year budget and

2  projections are the very same statements upon which Hussein now claims he "relied" in deciding

3  not to sell his shares.

4        On July 26, 2012, QSI made the announcement that allegedly caused its stock to

5  plummet.  Four days later, Hussein issued a press release proclaiming that he had "warned the

6  shareholders repeatedly about the potential for poor financial results."  Hussein testified at his

7  deposition that he was "very proud" because his prediction of QSI's financial decline "came

8  true." (Ex. 3 [Hussein Depo. 115:19-25].)

9        In his Opposition to the Motion, Plaintiff submits a self-serving declaration contending

10  he "never had any reason to doubt the accuracy of QSI's financial projections until July 26,

11  2012." Plaintiff further contends that he had decided to sell his shares, but then reevaluated his

12  decision because he had "confidence" in and "relied upon" the statements made by Defendants.

13  (Hussein Decl. 16-19.)  Plaintiff contends he "would have sold [his] 9,333,700 QSI shares" had

14  he known that QSI's statements were false.  (Hussein Decl. 20-23.)

15        Plaintiff's Declaration is insufficient to raise a triable issue of fact on the issue of

16  reasonable reliance because, in light of the undisputed evidence of Plaintiff's long standing battle

17  with, and extreme distrust of, QSI's leaders, along with Plaintiff's sophistication and desire to

18  seek control of the board, reasonable minds could not conclude that Plaintiff relied on any

19  statements made by Defendants in deciding to hold his shares.

20        As noted above, while the reasonableness of a party's reliance is ordinarily a question of

21  fact, the issue may be decided as a matter of law if reasonable minds can come to only one

22  conclusion based on the facts.  Here, reasonable minds could not conclude that Plaintiff

23  reasonably relied on Defendants' projections and statements in deciding to hold his shares.  The

24  undisputed material evidence shows Plaintiff was a sophisticated investor who had a long history

25  of deep distrust for Defendants, their ability to manage the company and their willingness to

26  provide truthful information about the company.  (UF 49-57, 62-63, 88-91, 125, H5-H7; Hussein

27  Dec., Para. 5, 7, 8.)

28        Plaintiff's self-serving declaration in opposition that he "never had any reason to doubt

9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    the accuracy of QSI's financial projections until July 26, 2012," decided not to sell his shares

2    because he had "confidence" in and "relied upon" the statements made by Defendants, and

3    "would have sold [his] 9,333,700 QSI shares" had he known that QSI's statements were false is

4    insufficient to raise a triable issue of fact on the issue of reasonable reliance.

5         Because the Court finds that Plaintiff could not have justifiably relied on Defendants'

6    alleged misrepresentations, the Court does not analyze whether Plaintiff failed to prove

7    cognizable damages.

8         **E.**     <u>**Evidentiary Objections**</u>

9            **1.**     **Plaintiff's Evidentiary Objections**

10         Overruled. While the Court generally does not invite "responses to objections," the

11    responses offered by Defendants were helpful to delineate the purpose for the offered testimony,

12    which frequently was a non-hearsay purpose, and as well as to provide the chain of

13    authentication.

14         Objection to Vale declaration is overruled. Vale lays the foundation for Exhibits 21 and

15    31, referenced in Defendants' UF's 37, and 58-62. Additionally, the Court notes that for 58-62,

16    Plaintiff's responsive Separate Statement says, "Hussein does not dispute the immaterial 'fact'

17    stated, but the only evidence provided by Defendants is inadmissible. See, Objection 4." Thus,

18    he does not dispute those facts cited in 58-62. In any event, these are not facts on which the

19    Motion stand or falls. For UF 37, Plaintiff's responsive Separate Statement says "Disputed but

20    immaterial," also citing to his evidentiary objection.

21         Objection (orally stated at the hearing to the entire declaration) to Supplemental

22    Declaration of Andrew Gray (Exhibits 95-101) is overruled. None of these exhibits are

23    referenced in Defendants' SSUF. Exhibit 96 for example (referenced in Gray supp. Paragraph 3)

24    responds to new evidence in Plaintiff's Opposition, (*see* page 10 lines 7-9 of Reply). Exhibit 95

25    adds context to Cohen's testimony (*see* Defendants' Response to Plaintiff's Additional Disputed

26    Facts, H 17-H18, H22). Exhibit 98 impeaches Hussein with deposition testimony (*see*

27    Defendants' Response to Plaintiff's Additional Disputed Facts, H30). Otherwise, these exhibits

28    are not a critical part of the Reply.

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

### 2. Defendants' Evidentiary Objections

Sustained as to Nos. 3 and 4 only; otherwise overruled, the remaining testimony is an issue of weight rather than admissibility. Also, objections 1 and 2 do not state the content of the objectionable testimony, as required by CRC 3.1354.

Accordingly,

**IT IS ORDERED** that Plaintiff's evidentiary objections are overruled, as stated in the Court's September 15, 2015 order and above.

**IT IS FURTHER ORDERED** that Defendants' evidentiary objections number 3 and 4 are sustained, and that the remainder of Defendants' evidentiary objections are overruled.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is granted and that Plaintiff's Complaint is dismissed with prejudice.

**IT IS FURTHER ORDERED** that the parties attend a status conference to address the status and expected schedule for Defendants' Cross-Complaint against Plaintiff Ahmed Hussein on November 10, 2015.

**IT IS FURTHER ORDERED** that Defendants submit any motion for reasonable costs under California Code of Civil Procedure § 1033.5 within 15 days after the date of mailing the notice of entry of judgment or dismissal by the clerk under Code of Civil Procedure section 664.5 or the date of service of written notice of entry of judgment or dismissal, or within 180 days after the entry of judgment, whichever is first.

**IT IS SO ORDERED.**

Dated: 10/7/15

Honorable Mary Fingal Schulte
Superior Court of California

11

PROPOSED ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of 18 years and not a party to this action.  My business address is Latham & Watkins LLP, 650 Town Center Drive, Floor 20, Costa Mesa, CA 92626.

On **October 1, 2015**, I served the following document described as:

### [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

by serving a true copy of the above-described document in the following manner:

### BY ELECTRONIC MAIL

The above-described document was transmitted via electronic mail to the following party on **October 1, 2015** at approximately 2:15 p.m.:

| | |
|---|---|
| Stephen E. Morrissey<br>SUSMAN GODFREY L.L.P.<br>1201 3rd Avenue, Suite 3800<br>Seattle, WA 98101-3000<br>smorrissey@susmangodfrey.com | Bryan J.E. Caforio<br>SUSMAN GODFREY L.L.P.<br>1901 Avenue of the Stars, Suite 950<br>Los Angeles, CA 90067-1606<br>bcaforio@susmangodfrey.com |

I declare that I am employed in the office of a member of the Bar of, or permitted to practice before, this Court at whose direction the service was made and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **October 1, 2015**, at Costa Mesa, California.

/s/ Jana Roach
_____
Jana Roach

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT