1   LATHAM & WATKINS LLP
        Peter A. Wald (Bar No. 85705)
2   505 Montgomery Street, Suite 2000
    San Francisco, California  94111-6538
3   Telephone:  +1.415.391.0600
    Facsimile:  +1.415.395.8095
4   E-mail:  peter.wald@lw.com

5   LATHAM & WATKINS LLP
        Michele D. Johnson (Bar No. 198298)
6       Andrew R. Gray (Bar No. 254594)
7   650 Town Center Drive, 20th Floor
    Costa Mesa, California  92626-1925
    Telephone:  +1.714.540.1235
8   Facsimile:  +1.714.755.8290
    E-mail:  michele.johnson@lw.com
9           andrew.gray@lw.com

10  Attorneys for Defendants and Nominal
    Defendant, Quality Systems, Inc.

11

12              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14  TIMOTHY J. FOSS, Derivatively on Behalf of Himself and All Others Similarly Situated, | Case No. 8:14-cv-00110-CJC-JPR |
| 15 | **Derivative Action** |
| 16                              Plaintiff, | **DEFENDANTS' AND NOMINAL DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| 17              v. | |
| 18  CRAIG A. BARBAROSH, GEORGE H. BRISTOL, JAMES C. MALONE, PETER M. NEUPERT, MORRIS PANNER, D. RUSSELL PFLUEGER, STEVEN T. PLOCHOCKI, SHELDON RAZIN,  and LANCE E. ROSENZWEIG, | |
| 19 | |
| 20 | Judge:     Hon. Cormac J. Carney |
| 21 | Date:      April 16, 2018 Time:      1:30 p.m. Place:     Courtroom 9B |
| 22                              Defendants, | |
| 23  -and- | |
| 24  QUALITY SYSTEMS, INC., | **Oral Argument Requested** |
| 25                              Nominal Defendant. | |
| 26 | |

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................... 1

II. ARGUMENT .............................................................................................. 3

    A.  Plaintiff Has Not Established That Any Director—Let
        Alone A Majority Of Directors—Is Interested ................................. 3

        1.  Plaintiff Has Abandoned His Unjust-Enrichment
            And Insider-Trading Claims ................................................. 3

        2.  No Director Faces A Substantial Likelihood Of
            Liability Based Upon The Disclosure Claim ........................ 4

            a.  No Director Faces A Substantial Likelihood
                Of Liability By Signing SEC Filings
                Containing The Alleged Misstatements ........................ 5

            b.  No Director Faces A Substantial Likelihood
                Of Liability Based Upon Their Board
                Committee Service ........................................................ 7

        3.  No Director Faces A Substantial Likelihood Of
            Liability Based Upon The *Caremark* Claim ...................... 9

            a.  There Were No Red Flags That Put The
                Board On Notice Of Illegal Conduct ........................... 10

            b.  Plaintiff Has Not Alleged Particularized
                Facts Showing That The Board Consciously
                Failed To Act ............................................................... 12

            c.  Plaintiff's Allegations Are Nothing Like
                Those Set Forth In The Cases Upon Which
                He Relies ...................................................................... 13

        4.  No Director Faces A Substantial Likelihood of
            Liability In Connection With Razin's Alleged
            Receipt of Insurance Benefits ............................................. 14

    B.  Plaintiff Has Not Established That Any Director Lacks
        Independence ..................................................................................... 16

        1.  Plaintiff's Conclusory Allegations That Other
            Directors Are Beholden To Razin Do Not Rebut
            The Presumption Of Independence ...................................... 17

        2.  Plaintiff Has Not Alleged Particularized Facts
            Demonstrating That Plochocki Lacks
            Independence ........................................................................ 18

    C.  Plaintiff's Complaint Should Be Dismissed With

1

Prejudice...........................................................................................19

2  III.     CONCLUSION .........................................................................................20

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Apple Inc. v. Sup. Ct.*,
  18 Cal. App. 5th 222 (2017) ............................................................................... 19

*Baca v. Crown*,
  2010 WL 2812712 (D. Ariz. July 12, 2010) ...................................................... 18

*Bader v. Anderson*,
  179 Cal. App. 4th 775 (2009) ................................................................. 3, 16, 17

*Beam v. Stewart*,
  845 A.2d 1040 (Del. 2004) .................................................................................. 17

*City of Roseville Emps.' Ret. Sys. v. Crain*,
  2011 WL 5042061 (D.N.J. Oct. 24, 2011) ........................................................ 16

*Desimone v. Barrows*,
  924 A.2d 908 (Del. Ch. 2007) ............................................................................ 13

*Durgin v. Sharer*,
  2017 WL 2214618 (C.D. Cal. Jan. 10, 2017) ...................................................... 4

*Eberhard v. Cal. Highway Patrol*,
  73 F. Supp. 3d 1122 (N.D. Cal. 2014) ............................................................... 15

*Fink v. Weill*,
  2005 WL 2298224 (S.D.N.Y. Sept. 19, 2005) .................................................. 18

*Fosbre v. Matthews*,
  2010 WL 2696615 (D. Nev. July 2, 2010) ......................................................... 19

*Gordon v. Bindra*,
  2014 WL 2533798 (C.D. Cal. June 5, 2014) ...................................................... 16

*Graham v. Hutcheson*,
  2009 WL 10664871 (S.D. Cal. Sept. 29, 2009) ................................................. 15

*Guttman v. Huang*,
  823 A.2d 492 (Del. Ch. 2003) .............................................................................. 8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

iii

REPLY ISO MOTION TO DISMISS
Case No.: 8:14-cv-00110-CJC-JPR

*In re Accuray, Inc. S'holder Deriv. Litig.*,
  757 F. Supp. 2d 919 (N.D. Cal. 2010) .......................................................... 6, 7

*In re Adolor Corp. Deriv. Litig.*,
  2009 WL 1325738 (E.D. Pa. May 12, 2009) ..................................................... 5

*In re Brocade Commc'ns Sys., Inc. Deriv. Litig.*,
  615 F. Supp. 2d 1018 (N.D. Cal. 2009) ..................................................... 13, 14

*In re Capital One Deriv. S'holder Litig.*,
  952 F. Supp. 2d 770 (E.D. Va. 2013).............................................................. 11

*In re Caremark Int'l Inc. Deriv. Litig.*,
  698 A.2d 959 (Del. Ch. 1996) ................................................................. 10, 14

*In re Citigroup Inc. S'holder Deriv. Litig.*,
  964 A.2d 106 (Del. Ch. 2009) ............................................................. 5, 6, 8, 9

*In re Citigroup, Inc. S'holders Litig.*,
  2003 WL 21384599 (Del. Ch. June 5, 2003) ................................................... 11

*In re CNET Networks, Inc.*,
  483 F. Supp. 2d 947 (N.D. Cal. 2007) .............................................................. 7

*In re Comput. Scis. Corp. Deriv. Litig.*,
  2007 WL 1321715 (C.D. Cal. Mar. 26, 2007) ............................................. 9, 15

*In re Comput. Scis. Corp. Deriv. Litig.*,
  244 F.R.D. 580 (C.D. Cal. 2007) .............................................................. 9, 13

*In re Dow Chem. Co. Deriv. Litig.*,
  2010 WL 66769 (Del. Ch. Jan. 11, 2010) ....................................................... 17

*In re First Solar Deriv. Litig.*,
  2016 WL 3548758 (D. Ariz. June 30, 2016)................................................. 3, 6

*In re Google, Inc. S'holder Deriv. Litig.*,
  2013 WL 5402220 (N.D. Cal. Sept. 26, 2013).................................................. 17

*In re Hecla Min. Co. Deriv. S'holder Litig.*,
  2014 WL 689036 (D. Idaho Feb. 20, 2014) ....................................................... 3

*In re Johnson & Johnson Deriv. Litig.*,
  865 F. Supp. 2d 545 (D.N.J. Sept. 29, 2011) ............................................. 8, 12

*In re Maxwell Techs., Inc. Deriv. Litig.*,
  2014 WL 2212155 (S.D. Cal. May 27, 2014) ...................................................8

*In re NutriSystem, Inc. Deriv. Litig.*,
  666 F. Supp. 2d 501 (E.D. Pa. 2009)...........................................................18

*In re Paypal Holdings, Inc. S'holder Deriv. Litig.*,
  2018 WL 466527 (N.D. Cal. Jan. 18, 2018) .......................................................3

*In re Polycom, Inc. Deriv. Litig.*,
  78 F. Supp. 3d 1006 (N.D. Cal. 2015) .................................................5, 7, 8, 11

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017).........................................................................6

*In re Sagent Tech., Inc. Deriv. Litig.*,
  278 F. Supp. 2d 1079 (N.D. Cal. 2003) .........................................................19

*In re Silicon Graphics Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999)......................................................................4, 5

*In re Student Loan Corp. Deriv. Litig.*,
  2002 WL 75479 (Del. Ch. Jan. 8, 2002) .......................................................19

*In re Tyson Foods, Inc.*,
  919 A.2d 563 (Del. Ch. 2007) ........................................................................19

*In re Veeco Instrument Inc. Sec. Litig.*,
  434 F. Supp. 2d 267 (S.D.N.Y. 2006).............................................................14

*In re Verisign, Inc. Deriv. Litig.*,
  531 F. Supp. 2d 1173 (N.D. Cal. 2007) .........................................................18

*In re Yahoo! Inc. S'holder Deriv. Litig.*,
  153 F. Supp. 3d 1107 (N.D. Cal. 2015) ...................................................passim

*Jones v. Jenkins*,
  503 F. Supp. 2d 1325 (D. Ariz. 2007)......................................................5, 6, 8

*Lyondell Chem. Co. v. Ryan*,
  970 A.2d 235 (Del. 2009)..............................................................................15

*Markewich v. Collins*,
  622 F. Supp. 2d 802 (D. Minn. 2009) ...........................................................13

*McCall v. Scott*,
239 F.3d 808 (6th Cir. 2001) ............................................................................ 14

*Mizel v. Connelly*,
1999 WL 550369 (Del. Ch. July 22, 1999) ....................................................... 19

*Okla. Firefighters Pens. & Ret. Sys. v. Corbat*,
2017 WL 6452240 (Del. Ch. Dec. 18, 2017) ............................................. 11, 12

*Rattner v. Bidzos*,
2003 WL 22284323 (Del. Ch. Apr. 7, 2003) ...................................................... 9

*Sanchez v. Aurora Loan Servs. LLC*,
2014 WL 12589659 (C.D. Cal. Mar. 11, 2014) .................................................. 4

*Stargaze Mgmt., LLC v. George Smith Partners, Inc.*,
2015 WL 4127838 (C.D. Cal. July 6, 2015) ....................................................... 7

*Stiegele v. Bailey*,
2007 WL 4197496 (D. Mass. Aug. 23, 2007) .................................................... 7

*Stone v. Baker*,
62 A.3d 1 (Del. Ch. 2012) ............................................................................... 10

*Stone v. Ritter*,
911 A.2d 362 (Del. 2006) ........................................................................... 10, 12

*Valencia v. Carrington Mortg. Servs., LLC*,
2012 WL 12883834 (D. Haw. July 31, 2012) .................................................. 15

*Walsh v. Nev. Dep't of Human Res.*,
471 F.3d 1033 (9th Cir. 2006) ........................................................................... 4

*Wiley v. Stipes*,
595 F. Supp. 2d 179 (D.P.R. 2009) .................................................................. 14

*Wood v. Baum*,
953 A.2d 136 (Del. 2008) ........................................................................ 6, 7, 16

## STATUTES

Cal. Corp. Code § 1601 ....................................................................................... 13

# I.     INTRODUCTION

Usurping the Board's authority over corporate decisions is a drastic measure reserved for egregious situations where a shareholder offers particularized facts showing that a majority of the directors acted in bad faith—and therefore, face a substantial likelihood of personal liability.  Plaintiff's Opposition confirms that this is not one of those cases.

Plaintiff asserts seven causes of action.  In his Opposition, he does not address—and thus has abandoned—two of them (Count VI for unjust enrichment and Count VII for insider selling).  He also concedes that the remaining five causes of action can be lumped into two groups:  Counts I and IV attempt to assert a "disclosure claim," while Counts II, III, and V relate to Board oversight, internal controls, and mismanagement, and are examined under the demanding *Caremark* standard.

Plaintiff admits that three of QSI's directors—James Malone, Peter Neupert, and Morris Panner—joined the Board after the events at issue, and thus face no liability on any of the claims.  As a result, in order to meet the stringent "demand excused" pleading standard, Plaintiff must allege specific facts demonstrating that five out of the remaining six directors face a substantial likelihood of liability with respect to at least one of his claims.  He has not done so.

Plaintiff contends that the directors "participated in the wrongdoing" underlying the disclosure claim by (1) signing a June 26, 2012 proxy letter containing the allegedly misleading financial guidance, and (2) serving on certain Board committees.  Courts consistently have rejected these exact arguments and concluded that the simple execution of a document containing an alleged misstatement, or service on a board committee, cannot establish that any director engaged in conduct exposing him or her to a substantial likelihood of liability. Entirely absent from the Complaint is any allegation that the directors had a role in

1   creating or approving the statements at issue—much less that they knew the

2   statements were false and made them in bad faith.

3       Similarly, Plaintiff's *Caremark* claim hinges on his ability to demonstrate,

4   through particularized facts, that the directors had knowledge of, but consciously

5   ignored, "red flags"—a clear warning that put them on notice of serious

6   wrongdoing or illegal activity.  Plaintiff points to two supposed red flags:

7   comment letters from the SEC, and former Board member Ahmed Hussein's

8   criticism of QSI's financial guidance (and the Board's alleged refusal to

9   investigate) *after* the Company declined to affirm it.  Neither allegation constitutes

10  a red flag.  Plaintiff does not even allege that the Board received the SEC letters.

11  Even if they had, the letters do not allege any violations of law or other

12  misconduct.  In any event, as Plaintiff concedes, no one consciously ignored those

13  letters; instead, the Company addressed them by filing revised proxy materials.

14  Likewise, Hussein's accusations cannot constitute a red flag because he made them

15  after the alleged wrongdoing took place.  Plaintiff does not claim that the Company

16  made any misstatements following Hussein's allegations.  Moreover, Plaintiff has

17  not alleged any specific facts establishing that the Board wrongfully refused to

18  investigate the reasons why the Company declined to affirm its guidance.  Nor can

19  he, since he filed this lawsuit instead of inspecting QSI's books and records, as he

20  was entitled to do under California law.

21      Because no director faces a substantial likelihood of liability (*i.e.*, is

22  "interested"), Plaintiff's contention that certain directors lack "independence" is

23  legally irrelevant; for purposes of demand futility, director independence only

24  matters when there exists an interested person.  Even if it were relevant, Plaintiff

25  alleges that certain Board members lack independence only from one person:

26  Sheldon Razin.  Plaintiff lifts the salacious accusations about Razin from Hussein's

27  now-dismissed state court complaint.  But Plaintiff does not point to a single

28  particularized fact establishing that any director even has a relationship with

1  Razin—let alone a relationship so bias-inducing that the director would be more

2  willing to risk his or her own reputation than harm the relationship.

3      Plaintiff has not pled facts sufficient to rebut the presumption under

4  California law that each director fulfilled his fiduciary duties.  His Complaint

5  should be dismissed with prejudice.

6  **II.    ARGUMENT**

7      Plaintiff concedes that three QSI directors—Malone, Neupert, and Panner—

8  face no liability because they joined the Board after the alleged misconduct

9  occurred.  *See* Opp. at 6; *see also In re First Solar Deriv. Litig.*, 2016 WL

10  3548758, at *5 (D. Ariz. June 30, 2016) (where directors joined the board after the

11  alleged misconduct occurred, they are "considered disinterested as a matter of

12  law").  Therefore, to meet Rule 23.1's "stringent conditions" for demand excusal,

13  Plaintiff must allege specific facts demonstrating that five of the remaining six

14  directors either are interested or lack independence.  *See In re Paypal Holdings,*

15  *Inc. S'holder Deriv. Litig.*, 2018 WL 466527, at *2 (N.D. Cal. Jan. 18, 2018); *see*

16  *also Bader v. Anderson*, 179 Cal. App. 4th 775, 799 (2009) (demand futility must

17  be assessed on a "director-by-director basis" to determine whether a majority of

18  the directors possess independence or disinterest).  Plaintiff's Opposition confirms

19  that he cannot meet this heavy burden.

20      **A.    Plaintiff Has Not Established That Any Director—Let Alone A**
        **Majority Of Directors—Is Interested**

21      **1.    Plaintiff Has Abandoned His Unjust-Enrichment And**
22          **Insider-Trading Claims**

23      Plaintiff does not contend that demand is excused with respect to the unjust-

24  enrichment claim against Razin (Count VI), or the insider-trading claim against

25  Plochocki (Count VII).  Nor could he, as these claims address far less than a

26  majority of the Board.  *See, e.g.*, *PayPal*, 2018 WL 466527, at *6 (where claim

27  was brought against only one director, demand was not futile); *In re Hecla Min.*

28  *Co. Deriv. S'holder Litig.*, 2014 WL 689036, at *15 (D. Idaho Feb. 20, 2014)

1   (where claim is brought against only two directors, the "allegations do not

2   implicate a majority of [the company's] board"); *see also* Mot. at 9-10 (citing

3   cases).

4          Plaintiff also fails to address Defendants' arguments that Razin and

5   Plochocki do not face a substantial likelihood of liability on these claims, and thus

6   has abandoned them. *See* Mot. at 9-11; *Walsh v. Nev. Dep't of Human Res.*, 471

7   F.3d 1033, 1037 (9th Cir. 2006) ("A plaintiff who makes a claim [] in his

8   complaint, but fails to raise the issue in response to a defendant's motion to

9   dismiss . . . has effectively abandoned his claim[.]") (citation omitted).  Counts VI

10  and VII should be dismissed with prejudice.  *See Sanchez v. Aurora Loan Servs.*

11  *LLC*, 2014 WL 12589659, at *22 (C.D. Cal. Mar. 11, 2014) (where plaintiff's

12  opposition does not address a claim, "the court considers the claim abandoned and

13  dismisses it with prejudice").

14                    **2.    No Director Faces A Substantial Likelihood Of Liability**
                            **Based Upon The Disclosure Claim**

15         Plaintiff contends, without identifying a single specific fact, that a majority

16  of the Board is interested because they "actively participated in and were directly

17  aware of a pervasive scheme to manipulate the reporting of the Company's

18  financial condition and future prospects."  Opp. at 2.  Numerous courts, including

19  the Ninth Circuit, have rejected this exact argument, finding general allegations

20  that the Board "participated in [a] fraudulent scheme" insufficient to demonstrate

21  that any director faces a substantial likelihood of liability on a disclosure claim.[1]

22  *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1999); *see also*

23  *Durgin v. Sharer*, 2017 WL 2214618, at *8 (C.D. Cal. Jan. 10, 2017) ("conclusory

24  allegations that the director Defendants participated in, approved, or permitted the

25  alleged wrongdoing" cannot excuse demand); *In re Adolor Corp. Deriv. Litig.*,

26

27  ────────────────

28  [1] Plaintiff does not dispute that his abuse-of-control claim is nothing more than a
    repackaging of his breach-of-fiduciary-duty claim, and that it is appropriate to
    consider these claims together.  *See* Mot. at 11 n.5.

2009 WL 1325738, at *7 (E.D. Pa. May 12, 2009) ("[A]llegations that the members of the Board, as a group, are not disinterested or independent because they 'participated in, approved and/or permitted the wrongs alleged in the Complaint' lack the particularity required to survive a motion to dismiss for failure to make demand."); *Jones v. Jenkins*, 503 F. Supp. 2d 1325, 1333 (D. Ariz. 2007) (allegations that directors "participated in . . .  the preparation of" alleged misstatements and failed to correct them were insufficient to establish demand futility).

Indeed, absent "particularized allegations explaining what the [d]irectors knew, when they knew it, or anything more than general allegations that the Board participated in making or causing false or misleading statements to be made, the Court cannot infer that the board acted in bad faith, knowingly, or with an intent to deceive." *In re Polycom, Inc. Deriv. Litig.*, 78 F. Supp. 3d 1006, 1017 (N.D. Cal. 2015) (citing *Silicon Graphics*, 183 F.3d at 990) (internal quotations omitted); *see also In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 132-34 (Del. Ch. 2009).  Plaintiff's Opposition confirms that he has pled none of this; his disclosure claim therefore fails.  *See Citigroup*, 964 A.2d at 132-134; *In re Yahoo! Inc. S'holder Deriv. Litig.*, 153 F. Supp. 3d 1107, 1120 (N.D. Cal. 2015).  Instead of identifying specific facts, Plaintiff asks the Court to infer bad faith by a majority of the Board on two grounds—both meritless.

a.   **No Director Faces A Substantial Likelihood Of Liability By Signing SEC Filings Containing The Alleged Misstatements**

Plaintiff first argues that certain directors face a substantial likelihood of liability on the disclosure claim because they signed a proxy letter on June 26, 2012 containing the allegedly misleading future guidance.  *See* Opp. at 15-16, 18-19.  This argument fails in the first instance because Plaintiff has not pled any particularized facts suggesting that the guidance was false.  Nor does he plead "what specifically the Company was obligated to disclose, and how the Company

1    failed to do so." *Citigroup*, 964 A.2d at 133.  Indeed, as Plaintiff acknowledges,

2    purely forward-looking statements (like the guidance in the June 26, 2012 proxy

3    materials) are not actionable.[2]  *See* Opp. at 11.  For this reason alone, no director

4    faces a substantial likelihood of liability with respect to the disclosure claim.  *See,*

5    *e.g.*, *Yahoo!*, 153 F. Supp. 3d at 1120.

6            In any event, it is well established that the mere signing of an allegedly false

7    statement is insufficient to create an inference that the directors had actual or

8    constructive notice of any illegality.  *See Wood v. Baum*, 953 A.2d 136, 142 (Del.

9    2008).  Plaintiff does not allege that the directors even discussed QSI's guidance—

10   much less that they were "actually involved in creating or approving" it.  *See*

11   *Citigroup*, 964 A.2d at 133 n.88; *see also First Solar*, 2016 WL 3548758, at *10

12   ("the fact that the directors signed financial disclosures" does not establish that the

13   directors were responsible for the statements); *In re Accuray, Inc. S'holder Deriv.*

14   *Litig.*, 757 F. Supp. 2d 919, 928 (N.D. Cal. 2010) (demand not futile where

15   plaintiffs "fail to allege that the alleged inaccurate [statement] was discussed by the

16   Board"); *Yahoo!*, 153 F. Supp. 3d at 1120 (where plaintiffs failed to show that the

17   board prepared the alleged misstatements, demand not futile).

18           Nor does he allege any specific facts demonstrating that any Board member

19   "had knowledge that any disclosures or omissions were false or misleading."

20   *Citigroup*, 946 A.2d at 134.  Plaintiff's conclusory allegation that Plochocki was

21   "privy to internal documents" (Opp. at 19) is insufficient:  Plaintiff does not allege

22   (i) what these "internal documents" revealed; (ii) how the information contradicted

23   QSI's guidance; (iii) if Plochocki was aware of this contradiction; or (iv) that he

24   made the statements knowing them to be false, or in bad faith.  *See, e.g.*, *Jones*,

25   503 F. Supp. 2d at 1332 (allegations that directors "knew the adverse, non-public

26

27   ---
     [2] Notably, the Ninth Circuit did not address whether the guidance reflected in the
     June 26, 2012 disclosure—or any of the proxy materials—was a purely forward-
28   looking statement subject to dismissal.  *See In re Quality Sys., Inc. Sec. Litig.*, 865
     F.3d 1130, 1148-49 (9th Cir. 2017).

1   information about the [company's] business . . . as well as its finances, markets and

2   present and future prospects, via access to internal corporate documents" cannot

3   establish a substantial likelihood of liability); *Accuray*, 757 F. Supp. 2d at 928 (no

4   substantial likelihood of liability where plaintiff did not plead particularized facts

5   showing that the directors were provided with "internal company metrics" that

6   "contradicted any of Defendants' statements"); *Stiegele v. Bailey*, 2007 WL

7   4197496, at *10 (D. Mass. Aug. 23, 2007) (that directors had "access to and review

8   of internal corporate documents" is insufficient; a plaintiff must plead

9   particularized allegations "regarding [the] internal documents, conversations or

10   meetings that allegedly revealed adverse non-public information to any particular

11   defendant, or what that information was").

### b.   No Director Faces A Substantial Likelihood Of Liability Based Upon Their Board Committee Service

12

13   Plaintiff's other argument—that membership on certain Board committees[3]

14   is a sufficient basis to infer bad faith—contradicts settled law. *See Wood*, 953

15   A.2d 136, 142 (Del. 2008) (membership on a board committee does not impose a

16   "culpable state of mind"); *Polycom*, 78 F. Supp. 3d at 1020 ("[I]t is contrary to

17   well-settled [] law to infer a culpable state of mind based solely on [board

18   committee] membership.") (citation and quotation omitted); *In re CNET Networks,*

19   *Inc.*, 483 F. Supp. 2d 947, 963 (N.D. Cal. 2007) ("Mere membership on a

20   committee or board, without specific allegations as to defendants' roles and

21   conduct, is insufficient to support a finding that directors were conflicted.").

22

23

24

25

26

27

28

---

[3] Plaintiff incorrectly states that Barbarosh and Rosenzweig served on the Special Committee. Opp. at 17. Only Razin, Pflueger, and Bristol served on this committee. *See* Ex. 5 at 72; *see also Stargaze Mgmt., LLC v. George Smith Partners, Inc.*, 2015 WL 4127838, at *4 (C.D. Cal. July 6, 2015) ("when a written instrument contradicts the allegations" in the complaint, the document "trumps the allegations"). Likewise, although Plaintiff's Opposition states that Barbarosh and Rosenzweig served on the Audit Committee (Opp. at 20-21), his Complaint correctly alleges that only Bristol and Pflueger served on this committee. Compl. ¶¶ 14-22, 80(e).

1       Plaintiff never mentions *how* these committees learned that the guidance was

2   allegedly false, *when* they learned it, *who* presented them with this information, or

3   *how* the committee members' response (or lack thereof) demonstrates that they

4   acted knowingly or in bad faith.  *Jones*, 503 F. Supp. 2d at 1334; *see also Guttman*

5   *v. Huang*, 823 A.2d 492, 498 (Del. Ch. 2003) (demand not futile where plaintiff

6   failed to plead "how often and how long [the committee] met, who advised the

7   committee, and whether the committee discussed and approved any of the

8   [wrongdoing]"); *In re Maxwell Techs., Inc. Deriv. Litig.*, 2014 WL 2212155, at

9   *14 (S.D. Cal. May 27, 2014) ("Plaintiffs' allegations regarding service on the

10   audit committee do not indicate a substantial likelihood of liability" where there

11   were "no allegations that [the directors] had the necessary information to realize

12   that there were misstatements"); *In re Johnson & Johnson Deriv. Litig.*, 865 F.

13   Supp. 2d 545, 564 (D.N.J. Sept. 29, 2011) (demand not futile where plaintiffs did

14   not "allege, with particularity, how often the committee and the Board met, who on

15   the committee communicated the corporate misconduct to the Board, and how the

16   Board responded to the information provided to them").  Instead, Plaintiff argues

17   that Audit Committee members Bristol and Pflueger "face personal liability"

18   because the committee charter mandated a "heightened review" of QSI's financial

19   statements.  Opp. at 20-21.  This argument fails on multiple levels.

20       First, as Plaintiff's Opposition makes clear, the charter outlined the Audit

21   Committee's role in reviewing QSI's financial statements—none of which have

22   been restated or are at issue here.  *See* Opp. at 20-21.  It says nothing about the

23   Audit Committee's role with respect to the Company's forward-looking financial

24   projections.

25       Second, even if the Audit Committee were charged with reviewing QSI's

26   projections, "director liability is not measured by the aspirational standard

27   established by the internal documents detailing a company's oversight system."

28   *See Citigroup*, 964 A.2d at 135; *see also Polycom*, 78 F. Supp. 3d at 1020-21

1   (allegation that directors served on audit committee did not excuse demand

2   because plaintiffs "failed to plead 'any particularized facts regarding the actions

3   and practices of the company's audit committee'") (citing *Rattner v. Bidzos*, 2003

4   WL 22284323, at *12-13 (Del. Ch. Apr. 7, 2003)).

5        Plaintiff must allege particularized facts showing that "the misstatement was

6   made knowingly or in bad faith." *Citigroup*, 964 A.2d at 134-35.  He cannot rely

7   on the charter to fill the gaps in his Complaint or, effectively, "allege that what

8   might have happened in law must have happened in fact."  *In re Comput. Scis.*

9   *Corp. Deriv. Litig.*, 2007 WL 1321715, at *6 (C.D. Cal. Mar. 26, 2007) ("*Comput.*

10  *Scis. I*").  Yet that is precisely what Plaintiff attempts to do:  he argues that the

11  Audit Committee members either did as the "charter required and so knew of the

12  illegal conduct or they did not and breached their fiduciary duties by failing to

13  review significant regulatory matters as the charter required."  Opp. at 21-22.  This

14  is the opposite of particularized pleading.  *See In re Comput. Scis. Corp. Deriv.*

15  *Litig.*, 244 F.R.D. 580, 590-91 (C.D. Cal. 2007) ("*Comput. Scis. II*") (demand not

16  futile where plaintiff does not specifically plead "1) what exact errors occurred; 2)

17  to whom, specifically are these errors attributable . . . ; and 3) [whether] these

18  errors [are] the product of wrongdoing constituting a breach of duty").  To

19  establish a substantial likelihood of liability, Plaintiff must allege facts "concerning

20  the likely or actual time, place and manner of specific communications" related to

21  the alleged misstatements, "as well as facts supporting the alleged knowledge of

22  the Audit Committee Defendants" about the statements' falsity.  *Comput. Scis. I*,

23  2007 WL 1321715, at 9.  Plaintiff has not pled any of this.  He cannot establish

24  that demand is excused on his disclosure claim.

25              **3.      No Director Faces A Substantial Likelihood Of Liability**
                         **Based Upon The *Caremark* Claim**

26

27        Although Plaintiff chides Defendants for applying the *Caremark* test to his

28  causes of action for failure to maintain internal controls, lack of oversight, and

mismanagement,[4] he then recognizes that *Caremark* governs alleged failures to maintain internal controls or oversee the company—exactly the types of claims at issue here.  Opp. at 22-23; *see also* Compl. ¶¶ 85-94, 100-03; *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).

Under *Caremark*, a director faces a substantial likelihood of liability only where Plaintiff pleads particularized facts demonstrating that "(a) the directors utterly failed to implement any reporting system or controls; <u>or</u> (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations, thus disabling themselves from being informed of risks or problems requiring their attention."  Mot. at 14 (citing cases).  In his Opposition, Plaintiff does not contend that the Board utterly failed to implement a reporting system or internal controls.  His *Caremark* claims, therefore, rest entirely on showing, through particularized facts, that a majority of QSI's Board "consciously failed to monitor or oversee its operations."  *See id.*  To do so, Plaintiff must establish that a majority of the Board (1) had knowledge of so-called red flags; and (2) consciously and in bad faith chose to take no responsive action.  *See Yahoo!*, 153 F. Supp. 3d at 1121; *see also Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006).  Plaintiff's Opposition demonstrates that he cannot meet either prong.

### a.   There Were No Red Flags That Put The Board On Notice Of Illegal Conduct

Plaintiff argues that two SEC comment letters, as well as challenges to the guidance made by former director Ahmed Hussein, put the Board "on notice of wrongdoing."  Opp. at 22.  None of this information provided the "evidence of illegality" or notice of "serious misconduct" required to constitute a red flag. *Stone v. Baker*, 62 A.3d 1, 15 (Del. Ch. 2012).

The SEC letters did not allege a violation of law or even suggest that one may have occurred.  Rather, they asked QSI to describe the assumptions

---

[4] Plaintiff does not dispute that these claims are properly considered together.  *See* Mot. at 13 & n.7.

underlying the projections in the proxy materials.  Compl. ¶ 57; *see also id.* ¶ 59
(request by the SEC that the projections and assumptions appear together in the
proxy materials).  They cannot be considered red flags.  *See In re Capital One*
*Deriv. S'holder Litig.*, 952 F. Supp. 2d 770, 786-87 (E.D. Va. 2013) (there "must
be some link between the alleged red flag and an actual problem within the
company"—that is, a "clear warning" of misconduct); Mot. at 16 (citing cases).  In
any event, Plaintiff does not allege that any Board member even received the SEC
letters.  *See Okla. Firefighters Pens. & Ret. Sys. v. Corbat*, 2017 WL 6452240, at
*21 (Del. Ch. Dec. 18, 2017).  This alone "prevents them from serving as red
flags."  *Id.*; *see also Capital One*, 952 F. Supp. 2d at 787 (to "plead a claim that
defendants consciously ignored red flags," a plaintiff must demonstrate "that
defendants were aware of the red flags"); *In re Citigroup, Inc. S'holders Litig.*,
2003 WL 21384599, at *2 (Del. Ch. June 5, 2003) ("There is nothing in the
Amended Complaint to suggest or to permit the court to infer that any of these
[purported red flags] ever came to the attention of the board of directors.").

Likewise, Hussein's challenge to the guidance—which came weeks *after* the
Company declined to affirm it—cannot constitute a red flag because by the time
Hussein released his statement, the alleged misconduct "had already occurred."
*Capital One*, 952 F. Supp. 2d at 786-87 (where attorney general filed a lawsuit
alleging improper conduct, the "flag was raised too late to serve as a warning to
defendants").  "To serve as a warning, a red flag must alert defendants to conduct
that is ongoing and that could be stopped using the newly-acquired information."
*Id.* at 787.  Here, Plaintiff does not allege that QSI made any false statements after
Hussein's accusations.

For similar reasons, neither the SEC letters nor Hussein's allegations are red
flags because they would turn "the *Caremark* inquiry on its head."  *Polycom*, 78 F.
Supp. 3d at 1015.  That is, rather than plead particularized facts showing that the
Board consciously and in bad faith determined not to monitor the Company's

controls over financial reporting and that, as a result, the Company made false statements, Plaintiff relies on the SEC's questions and Hussein's Monday-morning-quarterbacked accusations as proof that the prior statements must have been fraudulent and oversight must have been nonexistent.  But QSI has never been found to have made any misstatements—and courts consistently have rejected similar arguments, which assume, rather than plead with particularity, that because wrongdoing allegedly occurred, controls must have been deficient and the Board must have known.  *See, e.g.*, *Yahoo!*, 153 F. Supp. 3d at 1121 ("Plaintiffs fail to adequately plead facts showing that the . . . Directors consciously and systematically ignored sustained signs of [the alleged wrongdoing].  Instead, Plaintiffs' view the [alleged wrongdoing] 'with the benefit of hindsight, [and] the plaintiffs' complaint seeks to equate a bad outcome with bad faith.'") (quoting *Stone*, 911 A.2d at 373).

### b.   Plaintiff Has Not Alleged Particularized Facts Showing That The Board Consciously Failed To Act

Even if the SEC letters or Hussein's allegations constituted red flags (they do not), Plaintiff has not pled particularized facts suggesting that Board members ignored them in bad faith.  *See* Opp. at 24.  Just the opposite:  Plaintiff admits that "the Company filed a revised preliminary proxy statement attempting to address the SEC's July 3, 2012 letter."  Compl. ¶ 59; *id.* ¶¶ 60-61 (acknowledging that QSI filed revised proxy materials in response to an SEC comment); *see also Corbat*, 2017 WL 6452240, at *20 (demand not excused where the company "attempted to address the . . . issues" raised by the purported red flags); *Johnson & Johnson*, 865 F. Supp. 2d at 566 (demand not futile where the allegations suggested that the Company "was responding appropriately" to the alleged red flags).  The SEC took no further action, and QSI never has been found to have engaged in any wrongdoing with respect to the statements at issue.

1    Likewise, Plaintiff faults the Board for allegedly failing to investigate
2  Hussein's allegations regarding the guidance.  Opp. at 23.  But "in a derivative
3  case like this one, a board of directors is entitled to a presumption that they can and
4  should be allowed to manage the business affairs of a corporation, including the
5  decision of whether and how to investigate errors[.]"  *Comput. Scis. II*, 244 F.R.D.
6  at 591.  Plaintiff's Complaint does not plead any particularized allegations showing
7  that the Board is "unworthy of this deference."  *See id*.  On the contrary, Plaintiff
8  has no idea if the Board ever examined the reasoning behind QSI's decision not to
9  reaffirm its guidance because he never inspected the Company's books and records
10  pursuant to California Corporations Code § 1601.  Plaintiff therefore cannot plead
11  "any facts about what the [directors] did, when they did it, what they discussed,
12  what conclusions they reached, and why the [B]oard did or did not do anything."
13  *See, e.g.*, *Desimone v. Barrows*, 924 A.2d 908, 951 (Del. Ch. 2007); *see also*
14  *Markewich v. Collins*, 622 F. Supp. 2d 802, n.9 (D. Minn. 2009) ("Plaintiff could
15  have inspected [the Company's] books and records to amass a more robust factual
16  predicate to survive a motion to dismiss, but chose not to do so. . . . The Court will
17  not now stay its hand in order to assist the Plaintiff in strengthening her Complaint
18  when she did not exercise due diligence to do so prior to filing this action.").

19        **c.    Plaintiff's Allegations Are Nothing Like Those Set
20               Forth In The Cases Upon Which He Relies**

21    Plaintiff cites several cases in support of his argument that the Board failed
22  properly to oversee the Company.  *See* Opp. at 15, 22-23.  The egregious facts in
23  those actions bear no resemblance to the allegations here.  For example, in *In re*
24  *Brocade Communications Systems, Inc. Derivative Litigation*, 615 F. Supp. 2d
25  1018, 1031-32 (N.D. Cal. 2009), the plaintiffs pled particularized facts
26  demonstrating that the company, through its officers and directors, devised and
27  executed a scheme to backdate stock options.  The scheme involved falsifying
28  corporate records regarding the grant dates—going so far as to "forge records

relating to Board proceedings"—and developing special programs designed specifically to facilitate the backdating. *Id*. Once the practice came to light, the company twice restated its financials, the SEC commenced a formal investigation, and two of the company's officers/directors were found criminally liable. *Id*. at 1032. Plaintiff's other cases involve similarly shocking facts. *See In re Veeco Instrument Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 271, 278 (S.D.N.Y. 2006) (demand excused where company was forced to restate its financials, after ignoring whistleblower claims alerting the board to "flagrant, systematic, and repeated violations" of the law); *McCall v. Scott*, 239 F.3d 808 (6th Cir. 2001) (demand excused where plaintiffs pled specific, particularized facts that a majority of the board had been informed, and approved of, widespread Medicaid fraud resulting in state and federal investigations, whistleblower suits, and the resignation of eleven officers); *Wiley v. Stipes*, 595 F. Supp. 2d 179, 184, 186-87 (D.P.R. 2009) (demand excused where company restated its financials based upon an impaired loan provided to a troubled client and reported that its other loans would be reviewed by a majority of the board, but the board never evaluated the loans and continued to award additional loans to the same client).

QSI's financial statements never have been restated. Nor has the Company been the subject of any government investigation regarding the challenged conduct. And no one has been found to have engaged in any wrongdoing. Put simply, Plaintiff has not alleged any particularized facts demonstrating the Board's "sustained or systematic" failure to exercise oversight, which is a necessary condition for meeting the *Caremark*'s exacting test. 698 A.2d at 971.

### 4. No Director Faces A Substantial Likelihood of Liability In Connection With Razin's Alleged Receipt of Insurance Benefits

Relying solely on now-dismissed allegations from the Hussein Action, Plaintiff contends that a majority of the Board faces a substantial likelihood of liability for allegedly declining to investigate insurance payments made to Razin,

1    and then approving a future insurance award to him.  Opp. at 16-17.  This

2    argument fails for multiple reasons.

3        First, the conduct does not form the basis for Plaintiff's claims.  In his

4    Complaint, Plaintiff avers that this action seeks to remedy breaches of fiduciary

5    duties that commenced on *May 26, 2011*.  *See* Compl. ¶ 1.  According to Plaintiff,

6    however, the alleged misconduct relating to Razin's insurance occurred in *2010*.

7    Opp. at 16-17; Compl.  ¶ 72.  Indeed, none of Plaintiff's counts mention any issue

8    related to insurance—they pertain entirely to separate conduct.  *See* Compl. ¶¶ 81-

9    109.  Plaintiff therefore has not alleged a cause of action based upon Razin's

10   receipt of insurance.  *See Eberhard v. Cal. Highway Patrol*, 73 F. Supp. 3d 1122,

11   1132 (N.D. Cal. 2014) (claim dismissed where "allegations in the count" were

12   silent as to the alleged misconduct); *Valencia v. Carrington Mortg. Servs., LLC*,

13   2012 WL 12883834, at *6 (D. Haw. July 31, 2012) (claim for breach of covenant

14   of good faith and fair dealing in connection with specific contract dismissed where

15   counts did not mention the contract).

16       Second, Plaintiff has not adequately pled that he was a shareholder at the

17   time of this alleged wrongdoing.  *See Comput. Scis. I*, 2007 WL 1321715, at *15

18   (to proceed with a derivative action under Rule 23.1, plaintiff must plead, among

19   other things, that he was a shareholder at the time of the alleged wrongful acts).

20   Plaintiff avows that he has been a shareholder since May 26, 2011—but by his own

21   admission, the insurance issues he now identifies arose in 2010.  Compl. ¶¶ 1, 12,

22   72.  He therefore lacks standing to pursue this "claim."  *See Comput. Scis. I*, 2007

23   WL 1321715, at *15; *see also Graham v. Hutcheson*, 2009 WL 10664871, at *3

24   (S.D. Cal. Sept. 29, 2009).

25       Third, even if the claim were properly pled, and even if Plaintiff had

26   standing to pursue it, no director faces a substantial likelihood of liability.  *See*

27   *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243 (Del. 2009) (internal citations

28   omitted) ("In the transactional context, an extreme set of facts is required to sustain

a disloyalty claim premised on the notion that disinterested directors were intentionally disregarding their duties."). Plaintiff fails to allege even the most basic facts pertaining to this claim, including which directors allegedly voted against the investigation, who approved the award of future benefits, and what information was before them when they allegedly reached these decisions. *See* Compl. ¶ 72; *see also, e.g.*, *City of Roseville Emps.' Ret. Sys. v. Crain*, 2011 WL 5042061, at *5 (D.N.J. Oct. 24, 2011) (internal citations omitted) (dismissing claims where plaintiff failed to identify "which directors participated in the alleged wrongdoing"). Again, Plaintiff will not be able to identify such facts because he chose not to examine the Company's books and records before filing his lawsuit. *See Wood*, 953 A.2d at 143-44 ("[T]he failure to allege particularized facts is frequently compounded by a failure to make a statutory 'books and records' request concerning the matters alleged and the Board's consideration of such matters."). Plaintiff does not plead any particularized facts showing that any director's conduct was wrongful—much less in bad faith. He therefore cannot establish that any director faces a substantial likelihood of liability on this claim. *See Gordon v. Bindra*, 2014 WL 2533798, at *10 (C.D. Cal. June 5, 2014) (Opp. at 24-25) (allegation that something is "unfair" does not establish demand futility).

## B.    Plaintiff Has Not Established That Any Director Lacks Independence

In his Opposition, Plaintiff confuses the concepts of director interestedness and independence. Plaintiff asserts, for example, that Razin lacks independence because he may be liable personally on Plaintiff's claims. Opp. at 18. As explained above, Plaintiff has not presented particularized facts demonstrating that Razin faces a substantial likelihood of liability. But even if Plaintiff had pled such facts, that would render Razin "interested"—it does not implicate his *independence*. For purposes of demand futility, a director lacks independence only where he is *beholden* to another person found to be interested. *See Bader*, 179 Cal.

App. 4th at 792; *In re Dow Chem. Co. Deriv. Litig.*, 2010 WL 66769, at *8 & n.38 (Del. Ch. Jan. 11, 2010) (the "independence of directors is only relevant when there exists an interested person"). Plaintiff does not allege that Razin is beholden to anyone. Razin's independence, therefore, is not at issue.

Because Plaintiff has not adequately alleged that any director is interested, the independence of the Board members "need not be examined." *Dow Chem*, 2010 WL 66769, at *8. Indeed, in order for any director's "non-independence to be relevant, plaintiffs must identify interested persons . . . and must show that other directors are not independent from those interested persons[.]" *In re Google, Inc. S'holder Deriv. Litig.*, 2013 WL 5402220, at *4 (N.D. Cal. Sept. 26, 2013); *see also* Mot. at 18-19 (citing cases). For this reason, the Court need not consider Plaintiff's independence arguments.

Nevertheless, were the Court inclined to do so, Plaintiff's generalized allegations fail to rebut the presumption of independence afforded every director. *See Beam v. Stewart*, 845 A.2d 1040, 1048-49, 1051-53 (Del. 2004) ("The key principle upon which this area of our jurisprudence is based is that the directors are entitled to a *presumption* that they were faithful to their fiduciary duties.").

### 1.   Plaintiff's Conclusory Allegations That Other Directors Are Beholden To Razin Do Not Rebut The Presumption Of Independence

All but one of Plaintiff's independence arguments center around Razin. Plaintiff argues that the "majority of the Board members" were "beholden to" Razin and took actions "to favor" him. Opp. at 2, 14. But Plaintiff does not allege that a single Board member has a relationship with Razin—much less a relationship that is "so substantial that [the director] 'would be more willing to risk his or her reputation than risk the relationship.'" *Bader*, 179 Cal. App. 4th at 792 (citing *Beam*, 845 A.2d at 1052); Mot. at 18-20 (citing cases). Plaintiff surmises that certain directors were "allied with" Razin because, according to the allegations in Hussein's dismissed complaint, they approved life insurance payments to Razin

in 2010.  Opp. at 14-17.  But Plaintiff does not specifically identify who these directors were, any factual basis for the claim that they made this decision solely to line Razin's pockets, or even whether they remained beholden to him four years later (let alone the factual basis for any such claim), when Plaintiff filed the Complaint.  Plaintiff's allegations—"based on mere suspicions or stated solely in conclusory terms" (*Beam*, 845 A.2d at 1050)—are "plainly insufficient to meet the particularization requirement of Rule 23.1" (*Fink v. Weill*, 2005 WL 2298224, at *3 (S.D.N.Y. Sept. 19, 2005)).  *See also Baca v. Crown*, 2010 WL 2812712, at *9 (D. Ariz. July 12, 2010) ("Plaintiff has generally alleged that various directors are dominated or controlled by Tim and/or Eric Crown, but this type of allegation is neither specific nor detailed enough to satisfy the demand futility standard.").

### 2. Plaintiff Has Not Alleged Particularized Facts Demonstrating That Plochocki Lacks Independence

Plaintiff's only other independence argument pertains to Plochocki—who Plaintiff avers is "dependent on his fellow directors to maintain his position."  Opp. at 19.  As an initial matter, Plaintiff did not include this allegation in his Complaint, and the Court should not consider it here.  *See In re Verisign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173, 1196 (N.D. Cal. 2007) (where plaintiff "did not include these assertions in their demand futility allegations [in the complaint], the court need not consider them here").  In any event, it is well established that "demand futility cannot be pled merely on the basis of allegations that directors were paid for their service, and acted or would act to preserve their positions."  *See id*.  This is particularly true here, as (i) QSI does not have a majority shareholder "who can exercise control over" Plochocki's continued employment (*In re NutriSystem, Inc. Deriv. Litig.*, 666 F. Supp. 2d 501, 515 (E.D. Pa. 2009)), and (ii) Plaintiff's Complaint contains no allegations pertaining to Plochocki's compensation or the value of his employment (*see Verisign*, 531 F. Supp. 2d at

1196).[5]  If Plaintiff's allegations "were sufficient to show lack of independence, every inside director would be disabled from considering a pre-suit demand."  *See In re Sagent Tech., Inc. Deriv. Litig.*, 278 F. Supp. 2d 1079, 1089 (N.D. Cal. 2003)); *see also Fosbre v. Matthews*, 2010 WL 2696615, at *7 (D. Nev. July 2, 2010) ("Demonstrating that a director is principally employed by a corporation, however, is not enough to establish that director is incapable of impartially considering a demand on that corporation.").  The Complaint contains no particularized facts establishing that Plochocki lacks independence from any other Board member.  *See id.*

C.     **Plaintiff's Complaint Should Be Dismissed With Prejudice**

Although Plaintiff requests that the Court allow him to amend his Complaint, any amendment would be futile.  *See Yahoo!*, 153 F. Supp. 3d at 1128 n.14.  As Plaintiff acknowledges, the composition of QSI's Board has changed "materially" since he filed his Complaint.  Opp. at 11.  A majority of QSI's current Board—against whom the demand requirement would be assessed (*see Apple Inc. v. Sup. Ct.*, 18 Cal. App. 5th 222, 249-50 (2017))—joined after the events at issue in this litigation, and face no liability on any of Plaintiff's claims.  *See Exs. 7-8.* Plaintiff thus cannot identify any "facts that indicate amendment could cure the defects in the Complaint."  *Yahoo!*, 153 F. Supp. 3d at 1128 n.14.  Dismissal with

[5] Plaintiff's cases are easily distinguished.  *See* Opp. at 19 (citing *In re Tyson Foods, Inc.*, 919 A.2d 563, 583 (Del. Ch. 2007); *In re Student Loan Corp. Deriv. Litig.*, 2002 WL 75479, at *3 (Del. Ch. Jan. 8, 2002); *Mizel v. Connelly*, 1999 WL 550369, at *3 (Del. Ch. July 22, 1999)).  In *Tyson*, the CEO lacked independence from admittedly interested directors where those directors awarded him compensation as quid pro quo for his approval of the at-issue transactions.  919 A.2d at 579, 584.  In *Student Loan*, the court found it "improbable" that the CEO of Student Loan would elect to sue Citigroup, the company's majority stockholder, where he received Citigroup stock options—and no Student Loan options—as part of his compensation, and where the company was managed to "maximize the value Citigroup derives from controlling it."  2002 WL 75479, at *2-3.  In *Mizel*, the court found officer-directors to lack independence from the indisputably interested CEO where the CEO served as the directors' boss and owned nearly 40% of the company's stock, which allowed him effectively to terminate their employment.  1999 WL 55039, at *3-4.  No similar allegations are at issue here.  Plaintiff does not plead any particularized facts regarding Plochocki's compensation or his relationships with, or dependence upon, other directors.

1    prejudice is appropriate.

2    **III.    CONCLUSION**

3         For the reasons stated herein and in Defendants' and Nominal Defendant's

4    Motion, the Complaint should be dismissed with prejudice.

5

6    Dated:  March 16, 2018                    LATHAM & WATKINS LLP

7                                             By:  /s/ Peter A. Wald

8                                                  Peter A. Wald

9                                             Attorneys for Nominal Defendant
                                             Quality Systems, Inc. and Defendants
10                                            Craig A. Barbarosh, George H. Bristol,
                                             James C. Malone, Peter M. Neupert,
11                                            Morris Panner, D. Russell Pflueger,
                                             Steven T. Plochocki, Sheldon Razin, and
12                                            Lance E. Rosenzweig

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28